THE MAYOR, ALDERMEN, AND INHABITANTS OF THE CITY OF HOUSTON *v.* THE HOUSTON BELT AND MAGNOLIA PARK RAILWAY COMPANY.

No. 3432.

1. **Attack Upon City Ordinance for Fraud.**—Testimony was offered tending to show that an ordinance of the city council had been obtained upon misrepresentations made by the beneficiaries of the ordinance. The testimony was excluded, as was a charge refused presenting the issue whether the ordinance had been obtained by such misrepresentations. *Held*, it must be conclusively presumed that the ordinance expresses the purpose of the city in adopting it. Its language, and not the representations made to obtain it, must be looked to for its meaning and application. It was not insisted that by mistake, fraud, or otherwise the ordinance was expressed in language not intended to be used.

2. **Suburban and Belt Railways.**—Article 4278 of the Revised Statutes as originally enacted did not apply to urban, suburban, and belt railways. As amended April 8, 1889 (Gen. Laws 1889, p. 21), it applies to all railways.

3. **Same.**—Under article 4278 of the Revised Statutes as amended, urban, etc., railway companies are required within twelve months from the date of their charters to complete a portion of their road and commence and continue the running of cars thereon. No self-executing condition of forfeiture is imposed upon such railways.

4. **Same—Forfeiture.**—While a self-executing forfeiture of the charter rights of urban, suburban, and belt railways is not provided for, still they are subject to the laws, and courts may annul their charters for failure to observe the requirements of the law and to discharge their duty to the public. Until such judicial forfeiture the charters remain, although subject to forfeiture proceedings.

5. **City Ordinance—License to Railway to Occupy Streets.**—An ordinance of the city of Houston granted to the plaintiff (appellee) the right to construct and operate a railway upon certain named streets. In the ordinance it was prescribed: "So much of said railroad as extends  *  *  *  shall be completed within one year from date, and the balance of said road shall be completed within two years. And so much of said right of way as may not be occupied by said company within said time shall be considered as abandoned." *Held*, that under this clause, upon failure to occupy, etc., within the specified time, the railway company forfeited its rights beyond that so occupied, and no further; i. e., the forfeiture did not extend to the completed work.

6. **Occupied—Completed.**—The extent to which the streets were *occupied* by the railway company was a fact for the jury; it was improper for the court to charge the jury that such occupancy existed "if the ties were laid and the rails placed and spiked thereon."

7. **Construction of City Ordinance.** —The grant by the city of Houston to the appellee of license to occupy certain streets prescribed, "that said company may construct said railway so as to be operated by electricity, or such other power as will not necessarily obstruct the use of the streets by the public." Touching the right of the company to use steam, the city offered to prove that the use of steam upon certain of the streets in the line of the railway would interfere with the use thereof, and would be a public nuisance. This testimony was excluded. The court instructed the jury that "in this State railways generally use steam as a motive power. Under the ordinance plaintiff is not precluded from using steam, but might, if it desired, use electricity or other motive power known. It had the right to use steam if it desired." *Held*, That whether the use of steam would necessarily obstruct the use of the streets by the public was a fact to be found by the jury. It was error to exclude the testimony and to give the charge.

8. **General or Abstract Charge.**—A charge abstractly right and upon the general subject of controversy is not always proper to be given. The charge should apply to the case made in the pleadings and the evidence. See example.

9. **License by City to Street Railway Company.** —That the street railway company under its license from the city had made large expenditures is not of itself a reason that its time for completing the road as limited by the city authorities should be extended.

10. **Switches and Turnouts.**—The grant of the right to construct the street railway carries with it as an incident the right to construct such turnouts and switches as may be necessary for the successful operation of the road. But until the city council has refused permission to put in additional switches the District Court has no authority to act by injunction. The right of the city to be consulted about the situation and construction of the sidetracks, etc., is of equal dignity with the right of the railway company to construct them, and until it be shown that the city has waived its privilege or declined to act the railway company is not entitled to the writ of injunction to control the action of the city in that respect.

11. **Repeal of Ordinance Granting Right to Use Streets.**—The city by its repealing ordinance involved the right of the railway company to continue its work of construction in so much doubt as to justify the discontinuance of the work until the effect of the ordinance should be judicially determined; and the time intervening between the passage of that ordinance and the final determination in favor of the right of the railway to continue its work should not be estimated against it.

APPEAL from Harris. Tried below before Hon. JAS. R. MASTERSON. No statement is necessary.

*E. P. Hamblen,* for appellant.—1. The railway corporation is bound by the acts and representations of its president and agent in the same manner as an individual would be. Henderson v. Railway, 17 Texas, 576; Railway v. Johnson, 74 Texas, 256.

2. If the use of steam engines and the running of freight trains on certain parts of the street would prove a public nuisance, it was the city's right and duty to prevent their use. Cool. Const. Lim., secs. 207, 208; Railway v. City of Richmond, 96 U. S., 527; Bryson v. Philadelphia, 47 Pa. St., 329.

3. The ordinance which gave appellee the right to use the streets provided, that "said company may construct said railway so as to be operated by electricity or such other motor as will not necessarily obstruct the use of said streets by the public;" and the evidence sought from said witnesses would have established the fact that said railway operated by a steam engine would necessarily obstruct the use of said streets and become a public nuisance, and should have been admitted for that purpose.

4. The court erred in refusing to give the charge asked by defendant in which the issue as to whether plaintiff had forfeited its rights under the charter from the State was properly submitted, evidence having been given to sustain said issue.

Article 4278, as amended April 8, 1889 (Gen. Laws 1889, chap. 21, p. 17), provides: "The provisions of this article shall not apply to or in any manner affect railway companies incorporated for the construction and operation of urban, suburban, and belt railroads for a distance of less than ten miles, as provided in clause 2, section 1, of this act; provided, that all such companies shall, within twelve months from the date of their charter, complete a portion of their road and commence and continue the running of cars thereon." Bywaters v. Railway, 73 Texas, 625; Farnsworth v. Railway, 92 U. S., 67.

5. The court erred in refusing to charge the jury as requested, wherein was properly submitted the issue made by the defendant in its cross-bill, whether plaintiff had forfeited its right to use Commerce Street under the grant in the ordinance of June 24, 1889, by failure on part of plaintiff to complete the distance of its track as required in said ordinance. 2 Pars. on Con., secs. 659, 679; High on Injunc., sec. 405; Henderson v. Railway, 17 Texas, 576; Indianola v. Railway, 56 Texas, 597; Railway v. Railway, 68 Texas, 171; Railway v. Leavenworth, 1 Dill., 393.

6. The court erred in giving its charge, that "In this State railways generally use steam as a motive power. Under the ordinance plaintiff is not precluded from using steam, but might, if it desired, use electricity or other motor power known. It had the right to use steam if it desired." The said charge is on the weight of evi-

dence, argumentative, and is in direct conflict with the restrictions contained in the ordinance of June 24, 1889. Turnpike Co. v. Illinois, 96 U. S., 63.

*Baker, Botts & Baker, T. D. Cobbs*, and *Jones & Garnett*, for appellee.—

1. The city council by the ordinance of June 24, 1889, having granted to appellee the right to occupy certain of the streets of the city of Houston with its railway; the law expressly authorizing cities and towns to do this, and there being no restriction in appellee's charter as to its motive power; the court judicially knowing that steam is the usual power by which railway trains are operated, and there being no ordinance or resolution of the city council of Houston prohibiting the appellee from the use of steam; there being nothing in the ordinance of June 24, 1889, restricting this appellee to the running of only passenger trains on its road, and the court judicially knowing that railways chartered by the State have the right to run both freight and passenger trains, the appellant's second and sixth assignments of error are manifestly not well taken. Rev. Stats., arts. 4173, 4232.

2. The effect in law and according to common understanding of the ordinance of June, 1889, was to permit the appellee to use electric or steam power in operating its railway; and the law has settled that such use of streets is not a nuisance, and has given the municipal corporations of the State express power to authorize such use by railways of the streets in a city, and the court judicially knows that the appellee's charter authorized the use by appellee of steam power in operating its trains, and this was known to the appellant when it passed the ordinance of June, 1889; and there being no provision in said ordinance prohibiting the operation of trains in the manner that trains are usually operated, it must be the conclusive presumption that the ordinance contemplated and intended the use of such power, and parol evidence to the contrary should not be admitted.

3. The law in force at the time appellee's charter was granted, April 2, 1889, being article 4278 of the Revised Statutes, appellee was not required to complete a portion of its road and commence and continue the running of cars thereon within twelve months from the date of the charter in order to prevent a forfeiture of its charter; and the act passed April 8, 1889, referred to in appellant's brief, manifestly had no application to railway companies that had previous to that time been chartered, but only applied to such railway companies as might thereafter be chartered under that act—that is, the act of 1889; and it being admitted in this case that appellee's charter was granted April 2, 1889, the law of April 8, 1889, can have no bearing or effect upon it.

4. Even if the Act of April 8, 1889, was intended to apply to railways theretofore chartered, yet no such forfeiture as the appellant contends for is provided for or authorized by that act. The latter part of

section 2 of that act is all of the act that applies to urban, suburban, and belt railways. Bywaters v. Railway, 73 Texas, 625.

5. The fourth section of the ordinance of June 24, 1889, passed by defendant's city council, did not provide for any such forfeiture of appellee's rights as is claimed in the refused charge, but on the contrary expressly provided, that the only penalty or forfeiture that would be incurred by appellee by reason of its failure to construct all of its road from deep water on Buffalo Bayou (which was outside the city limits) to Fannin Street, within the time fixed by the ordinance, was and is, that so much of said right of way granted by the city as was not occupied by appellee within the time fixed by the ordinance should be considered abandoned; and it is apparent from the ordinance, as a matter of law, that the parties contracted and agreed, by the ordinance, that no other forfeiture or loss of rights should be incurred by appellee than was provided for in the ordinance if appellee did not occupy all the right of way within the time prescribed by the ordinance.

6. The grant of the right to construct and operate a railway track necessarily carries with it and implies the right to construct such switches as are necessary for the convenient and safe operation of the railway. Railway v. Second Municipality, 1 La. Ann., 128; Knight v. Railway, 9 La. Ann., 284; Block v. Railway, 58 Pa. St., 252.

7. The city having granted the appellee the right to construct and operate a railway track on Commerce and other streets, as mentioned in the ordinance of June, 1889, and switches and sidetracks being incident and necessary to all railways, and the right to construct and use switches and sidetracks being necessarily incident to the grant of the right to construct and operate a railway, and the defendant refusing to allow appellee to construct such switches, and appellee having to appeal to the court, as it did in this case, to require its rights in the premises to be respected, and it being necessary for the court before granting the relief to know just what switches were necessary and where the same should be placed, in order that the decree might intelligently direct where switches were authorized to be placed, the court should have admitted the evidence excluded, as mentioned in the cross-errors. Railway v. Second Municipality, 1 La. Ann., 128; Knight v. Railway, 9 La. Ann., 284; Block v. Railway, 58 Pa. St., 252.

HENRY, ASSOCIATE JUSTICE.—On April 2, 1889, the Houston Belt & Magnolia Park Railway Company, plaintiff below and appellee here, was duly chartered under the laws of Texas, for the purpose, as expressed in the charter, of "Constructing, operating, and maintaining a single or double track railway and telegraph line in the county of Harris; beginning at or near Buffalo Bayou, between the mouth of Bray's Bayou and Long Reach, and from thence to the city of Houston, and along such streets in the city of Houston as the city council may de-

fine, with such branches as will enable said railway to connect with any or all railways leading to and from said city, at any point within or without the city limits, the main line and branches in all to be about fifteen miles in length. Such railway may be located so that it, or any part, may be used as a belt or connecting line."

The charter further provides, that "the time of the commencement of this corporation shall be the date of the filing of these articles of association in the office of the Secretary of State, and the same shall continue for fifty years."

On June 24, 1889, the city council of Houston passed an ordinance entitled, "An ordinance granting the right of way to the Houston Belt & Magnolia Park Railway Company over certain streets in the city of Houston."

Section 1 of this ordinance provides, "that the Houston Belt & Magnolia Park Railway Company is hereby conceded and granted the right to construct and operate a railway track from the eastern line of the corporate limits of the city of Houston to Commerce Street, and along the same to Caroline Street, thence on Caroline Street to its intersection with Franklin Street, thence on Franklin Street to Fannin Street, thence on Fannin Street to Preston Street; also from Caroline along Commerce Street to intersect with Washington Street, thence along Washington Street to and along Sixth or Tenth streets, so as to form a connection with the Houston & Texas Central railway, with the right to construct a bridge," etc.

Section 2 of said ordinance provides, "that the said company may construct said railway so as to be operated by electricity or such other power as will not necessarily obstruct the use of said streets by the public, and the said company shall have the right to cross and connect with any other railway in the city of Houston on any street where its lines intersects the same, and for the purpose of making such connection may use any part of such street not occupied by such other road or roads."

Section 3 of said ordinance provides, "that said railway shall be constructed in a first-class manner, with rails laid so as to conform to the grade of said streets, that the same can be safely and conveniently used as a public highway, and said company shall be compelled to pay for paving so much of said streets as are now or which may hereafter be paved with gravel or other material as may be contained in the width of said roadbed as prescribed in the city charter, and that the roadbed shall be constructed on such grades as shall be furnished by the city engineer, and be subject to all general ordinances of said city now in force or which may hereafter be passed for the regulation of railways in said city."

Section 4 of said ordinance provides, "that the rights and privileges herein granted are made in consideration of said railway agreeing to

construct and operate its line of railway from the city of Houston to deep water on Buffalo Bayou, at or near Magnolia Park, at a point to be known as Port Houston, and so much of said railway as extends from said point, or said bayou, to and along Commerce Street, to and along Fannin Street, shall be completed within one year from date, and that the balance of said road shall be completed within two years, and so much of said right of way as may not be occupied by said company within said time shall be considered abandoned."

A witness for the plaintiff testified, on the trial of the case, that it then had a complete and finished road from Fannin Street along Commerce Street east to Port Houston, on Buffalo Bayou, a distance of six miles, following the railway track, and that it was operating its engines and cars thereon; that Commerce Street, from Fannin Street east to the city limits, a distance of about one and one-half miles, was occupied by said railway track prior to the 24th day of June, 1890; that the ties had been put down and the rails spiked thereon prior to said date; that no part of the road had been constructed on the 8th day of April, 1890, but ties had then been distributed along Commerce Street east of Fannin Street; that plaintiff began putting down its track in April, 1890, and by the 24th day of June of that year had put it down on Commerce Street from Fannin Street to the eastern city limits, etc.; that the point on Buffalo Bayou, between Long Reach and Bray's Bayou, is about six miles from the court house, or about four and one-half miles from the limits of the city of Houston, and that no point named in plaintiff's charter is more than ten miles from the said city.

Other evidence was introduced tending to show that the track along Commerce Street had not been entirely brought to grade nor completed in other respects on the 24th day of June, 1890.

While plaintiff was continuing the construction of its track, the city council of the city of Houston, on the 28th day of July, 1890, passed an ordinance to repeal the ordinance of the 24th day of June, 1889, and to withdraw and annul all rights and privileges conferred by that ordinance, on the ground that the railway company had failed to construct its track in the manner and within the time prescribed by its charter and said ordinance.

Whereupon the railway company filed its petition for an injunction to restrain the city from "tearing up, removing, or in any manner interfering with plaintiff's railway as then constructed from Fannin Street to the eastern corporate limits of said city, and from hindering the railway company in the construction and operation of the extension of its railway from its then terminus on Fannin Street in and along Commerce Street to Washington Street, thence along Washington Street to Sixth or Tenth Street, and thence along Sixth or Tenth Street to a connection with the Houston & Texas Central Railway, and from impeding it in the construction and operation of switches, side-

tracks, and turnouts, from Fannin Street to Crawford Street, and at the points where said railway crosses the Gulf, Colorado & Santa Fe Railway, the Texas Western Railway, and the Galveston, Houston & Henderson Railway."

The defendant answered, and resisted all relief sought by the plaintiff, contending that it had forfeited its charter rights as well as the privileges conferred upon it by the city; charging that the ordinance was procured by misrepresentation and fraud; that the use of steam as a motive power along Commerce Street would be attended with danger to persons using the street, and would prevent its free and proper use by the public.

A final decree was rendered, upon the verdict of a jury, on the 11th day of May, 1891, restraining the city from in any manner interfering with the plaintiff's track on Commerce Street from its intersection with Fannin Street to its eastern termination, and thence to the eastern corporate limits of the city, or with the operation of trains thereon, and from impeding plaintiff in the construction and operation of its railway on Commerce Street from its terminus on Fannin Street to the intersection of Washington Street by Commerce Street, and thence along Washington Street to Sixth or Tenth Street to a connection with the Houston & Texas Central Railway; and from in any manner interfering with plaintiff's switch or sidetrack between Fannin and Caroline streets; and from in any way or manner interfering with plaintiff in the construction and operation of its said road along the line aforesaid from Fannin Street to a connection with the Houston & Texas Central Railway; and from in any way or manner interfering with said switch or with the use of the same by plaintiff; and from interfering with plaintiff in the construction of such switches and sidetracks as may be necessary to make convenient connection between plaintiff's railway and the Gulf, Colorado & Santa Fe Railway, and the Texas & Western Railway, and the Galveston, Houston & Henderson Railway, such switches to be at or about the points where plaintiff's road crosses said other railways.

The decree provides, that the time between the 28th day of July, 1890, and the final termination of this cause shall not be estimated against the plaintiff in applying the ordinance of the 24th day of June, 1889.

Both parties have assigned errors.

It is contended by the appellant, that "The court erred in refusing to permit the defendant to prove by John T. Brady and John Kennedy that the plaintiff herein induced the defendant to pass the ordinance of June 24, 1889, granting the plaintiff the right to use certain streets in the city of Houston, by representing to the council of said city at the time said ordinance was passed that said ordinance which plaintiff had prepared and then read restricted plaintiff to the use of electricity

as a motor, and to (use of) passenger trains, and would not permit
plaintiff to use steam as a motor, nor to run freight trains on said
streets; and that the council, relying on such representations, passed
said ordinance, and would not have done so had it not believed that no
right was therein given to use steam power as a motor on said streets,
nor to operate freight trains thereon; and in refusing to give charge
number 3, asked by defendant, which presented the issue whether or
not defendant was induced to pass the ordinance of June 24, 1889, re-
lying on the representations made by the plaintiff that it (the ordi-
nance) only permitted the plaintiff to use electricity as a motor and
run passenger trains, and did not permit the use of steam engines or
freight trains on Commerce Street.''

We do not think that an error was committed in refusing both the
evidence and the charge. It must be conclusively presumed, as the
matter is now presented to us, that the ordinance expresses the pur-
pose of the city in adopting it. Its language, and not the representa-
tions made by plaintiff or its agent, must be looked to for its meaning
and application. It is not pretended that by mistake, fraud, or other-
wise the ordinance was expressed in language not intended to be used.

The court refused to give the following charge at the request of the
city: "You are charged, that under the law the plaintiff was required
within twelve months from the date of its charter, which bears date
April 2, 1889, to complete a portion of its road and commence and
continue the running of cars thereon. If you believe from the evi-
dence that the defendant, through its city council, granted the plaint-
iff the privilege to construct its road and operate its cars on certain
named streets in the city of Houston, and that the plaintiff did not,
within twelve months from the 2d day of April, 1889, the date of its
charter from the State, complete a portion of its road as authorized by
its charter, and commence and continue the running of cars thereon,
and that after said twelve months had expired, and before the plaint-
iff had completed a portion of its road and commenced and continued
the running of cars thereon, the defendant by its proper council re-
pealed and annulled the rights and privileges theretofore granted to
plaintiff to use said streets, and has not since through its council
granted the plaintiff the right to operate its railway and cars on the
streets of said city, then you will return your verdict for defendant,
and need not inquire into the other issues herein presented."

In support of its contention that the railway corporation had forfeited
its charter by not beginning the construction of its road within twelve
months from the time when it filed its charter, the appellant refers us to
article 4278 of the Revised Statutes, as amended by the Act of April
8, 1889 (Gen. Laws 21st Leg., p. 17).

We are of opinion that the original act did not apply to roads of the
class to which the plaintiff's belongs. Rev. Stats., art. 4278. The

amendment took effect in six days after plaintiff's charter was filed, and does relate to all railways.

With regard to a railway not "urban, suburban, or belt," the law as amended allows two years after its articles of association have been filed and recorded to begin the construction of the road and equip and put in good running order at least ten miles thereof, and declares, that upon failure so to do *"its corporate existence and its powers shall cease as far as it relates to that portion of said road then unfinished,"* etc.; but declares that *" The provisions of this article shall not apply to or in any manner affect railway companies incorporated for the construction and operation of urban, suburban, and belt railroads for a distance of less than ten miles, as provided in clause 2 of section 1 of this act; provided, that all such companies shall, within twelve months from the date of their charter, complete a portion of their road and commence and continue the running of cars thereon."*

So much of the act as directs the construction of ten miles within two years and declares a forfeiture of the charter upon failure, is self-executing. But in that case the charter remains in force for the completed road.

The declaration, that none of the provisions of the article shall apply to urban, suburban, or belt railways, is plain and emphatic. The forfeiture clause is not more applicable to them than the one in regard to construction is.

The Legislature may very well have deemed it expedient to leave other railway charters in force for whatever length the roads might be constructed without doing the same thing in regard to street or suburban railways. It is only provided, that roads belonging to the class last mentioned shall complete "a portion" of their roads, while the construction of not less than "ten miles" is demanded of the other class.

While a self-executing forfeiture of the charter rights of urban, suburban, and belt railways was not provided for in any event, still it was not intended to emancipate them from every species of restraint, but such companies were required to perform specified acts within twelve months from the dates of their charters. For their failure to observe these requirements, the Legislature did not prescribe the remedy and did not limit it.

The enforcement of the law in regard to such railways is left with the courts. If they shall fail to observe the requirements of the law and discharge their duties to the public, they may no doubt be entirely divested of their corporate privileges through appropriate judicial proceedings. Such a forfeiture will not leave the charter in force to any extent or for any purpose. But such charters will remain in full force until their forfeiture has been ascertained and declared in a suit brought for that purpose.

The court did not err by refusing to give the charge. Appellant assigns error upon the refusal of the court to give the following charge at its request: "No railway corporation has the right to occupy with its railway track any streets or parts thereof in the city of Houston without the consent and permission of said city, and the defendant in granting such privilege to so use its streets had the right to say upon what conditions it would make said grant or permission, which permission, together with the conditions with which it was granted, became a contract binding on both parties as if made between individuals. The substance of the ordinance passed by defendant June 24, 1889, declares, that it was made upon the consideration that plaintiff would complete its road from Fannin Street in said city along Commerce Street to the eastern limits of said city, thence to deep water on Buffalo Bayou, at or near Port Houston, in Magnolia Grove, within twelve months of said date. The ordinance passed by defendant July 28, 1890, repeals the ordinance of June, 1889, above referred to, on the ground that plaintiff had not so constructed its road as required in said ordinance of June 24, 1889, and was using no diligence so to do. You are charged, that if you believe from the evidence that plaintiff had not completed, or substantially completed, its road from Fannin Street along Commerce Street to deep water on Buffalo Bayou, as provided for in the ordinance of June 24, 1889, at the time the ordinance of July 28, 1889, was passed, and that plaintiff had by such failure broken the terms of said contract, then the defendant had the right to treat said contract as broken and to withdraw the privileges it had granted, and the ordinance passed July 28, 1890, is valid, and you will find for defendant."

And in the same connection appellant complains of the following charge given by the court at the request of the plaintiff: "The jury are instructed, that in order to entitle the plaintiff to the privileges granted it by the ordinance of June 24, 1889, on Commerce Street, from Fannin Street to the eastern limits of the city, it was not necessary that plaintiff's railway should have been entirely completed and ballasted and in operation within twelve months from June 24, 1889, on said line, but it would be sufficient to avoid any forfeiture of the rights granted plaintiff as to said line, that the ties were laid and the rails placed and spiked thereon the entire length of said line from Fannin Street to the eastern limits of said city within twelve months."

The ordinance referred to (of July 29, 1890) purports to be a repeal of the ordinance of the 24th day of June, 1889, and to withdraw "*all rights, privileges, and franchises therein granted.*"

The penalty for a failure to comply with its provisions is prescribed by the ordinance itself. Its language in regard to the time for completing the work and the consequence of a failure in that respect is as follows:

"So much of said railway as extends from said point on said bayou to and along Commerce Street, to and along Fannin Street, shall be completed within one year from date, and the balance of said road shall be completed within two years. *And so much of said right of way as may not be occupied by said company within said time shall be considered abandoned.*"

It is clear, that what the railway company is to lose by a failure to construct its road within the stipulated periods of time is the right to construct the uncompleted portions thereof—nothing more. It was not the contract that by the failure of the company to do the whole of the work within the time prescribed it forfeited its privileges, as well for the road it had constructed as for that it had failed to construct, and lost its right to occupy the streets with its completed road, as well as abandoned its right to occupy new ground.

The charge requested by the city was contrary to the terms of its ordinance, and it was therefore properly refused by the court.

While the language of the ordinance in regard to time is, that the road shall be "completed," the word "occupied" is used in regard to the abandonment of the railway company's rights on account of its failure to observe its part of the contract. The ordinance, considered as a whole, does not, we think, justify the interpretation that the failure of the railway company to occupy the street with a road finished or completed in every respect, should cause it to be treated as having lost its privileges upon the part of the street on which it had constructed its road; but on the other hand, we do not think that every character of mere occupancy of the street should be held a sufficient compliance by the company with the ordinance to save it from being treated as having abandoned so much of the street. We think, that to prevent a forfeiture of the part occupied, by reason of the occupancy, there should be a substantially constructed track; and whether or not that existed was a question of fact for the jury under all of the evidence. While the jury may properly have so concluded, we do not think that it was proper for the court to charge that the contract was complied with by the railway company "if the ties were laid and the rails placed and spiked thereon."

Appellants assign error upon the following charge given by the court: "In this State railways generally use steam as a motive power. Under the ordinance plaintiff is not precluded from using steam, but might, if it desired, use electricity or other motor power known. It had the right to use steam if it desired."

It will be remembered that the ordinance of the 24th day of June, 1889, under which the plaintiff corporation was occupying the street, in its relation to this aspect of the controversy contains the following clause: "*That said company may construct said railway so as to be oper-*

*ated by electricity or such other power as will not necessarily obstruct the use
of the streets by the public."*

In this connection, the appellant contends that the court erred in
the following respects: "In excluding the evidence of Mayor Scherffius
and Robert Lockart, by which defendant would have sustained the al-
legations in its cross-bill and have shown that the use of steam as a
motor and to operate freight trains on Commerce Street would have
interfered with the use of said street and proved a public nuisance,
owing to the thick population thereon, the public bridges it passed
over, the school houses, etc., and would have added greatly to the dan-
ger and interference with the use of said street over what would have
resulted from the use of electricity as a motor and the operation of
passenger cars alone."  And "in refusing to give the charge asked by
defendant, which submitted the issue made by defendant, whether the
use of steam as a motor on said Commerce Street and running freight
trains thereon would increase the danger and interfere with the use of
said street by the public more than if it was operated by electricity
and only passenger trains run thereon, the purpose of said issue being
to restrict plaintiff to the use of electricity or such motor power as
would not interfere with the use of the street as provided in said ordi-
nance of June 24, 1889."

Notwithstanding the fact that railways are usually operated in this
State by steam, and that plaintiff's charter may authorize its use, it
was still within the province of the defendant city to prescribe what
power, not inconsistent with the charter, should be used upon specified
streets.    The city was not compelled to permit the use by plaintiff of
the particular streets mentioned in its ordinance, before it had given
its consent for it to do so.

The right of the city to control and regulate the power by which
cars shall be propelled over its streets, with reference to the situation
and other purposes of the streets, is one which should not be surren-
dered even temporarily without due consideration, and certainly should
not be compelled when not voluntarily yielded.   The ordinance does
not so authorize, and it was misleading to charge that the railway
company had the right to use steam if it desired, independently of the
consent of the city or its effect upon other uses of the streets by the
public.

As the judgment must be reversed, we do not deem it proper to
now comment upon this branch of the case further than to say, that
we think the plain and express language of the ordinance should be
respected, and the railway company should be permitted to use for
the purpose of propelling its cars within the city electricity or any
other power not necessarily obstructing the use of the streets by the
public.   Whether or not the use of steam will have that effect will be
a question of fact for the jury under appropriate instructions, and such

evidence as tends to elucidate that issue should be received.    If it was intended to confer upon the railway company an absolute right to use steam, it could and should have been so expressed, as was done in regard to electricity.    The decision of this issue is of importance only in view of the case made by the defendant.    If upon the trial of the issue it shall be found against the railway company, then the use of steam should be enjoined; but the violation of its privilege in that particular by the railway company may be remedied without denying to it its other rights.

The court charged the jury, that "A municipal government can not by an ordinance grant a right of way over its streets and induce parties to make large expenditures of money on the faith of such ordinance, and arbitrarily repeal such ordinance in such way and at such time as would, in its necessary effect, practically destroy vested rights so acquired.    An ordinance which is unreasonable and not authorized by law is a nullity."

While it may be readily conceded that this charge is correct as an abstract proposition, still we think it should not have been given. The charge should have been made directly applicable to the facts in issue.

The court gave the following charge at the request of the appellee, of which appellant complains: "If the jury believe from the evidence that plaintiff built its railway on Commerce Street, from Fannin Street eastwardly to the termination of Commerce Street, and from thence to the eastern corporate limits of the city of Houston, within twelve months from the 24th of June, 1889, and that such road was constructed under the supervision of the city engineer; and if you further believe from the evidence that the extension of said road from Fannin Street along Commerce Street to Washington, and thence along Washington Street to Sixth or Tenth streets, thence along Sixth or Tenth streets to a connection with the Houston & Texas Central Railway will be necessary to make plaintiff's railway more profitable and convenient than it would be without said extension; and if you believe from the evidence that the road already built and in operation by plaintiff was constructed at a large expense by plaintiff on the faith of the ordinance passed by the city council of the city of Houston, on June 24, 1889, in evidence before you, and in consideration of the rights and privileges therein granted, then you will find for the plaintiff as to the road from Fannin Street to the eastern corporate limits of the city of Houston, and as to the extension from Fannin Street to a connection with the Houston & Texas Central Railway."

If the railway company can construct its road according to the terms of the ordinance of the 24th day of June, 1889, and within the time by it prescribed, to a connection with the Houston & Texas Central

Railway, it should be permitted to do so by virtue of its charter and the ordinance, but not on account of the other considerations stated. No plan of the streets of the city or statement of their connection with each other is found in the record.

The appellant complains of the following charge given by the court:

"If you believe from the evidence that the switch of plaintiff, as now constructed on Commerce Street, between San Jacinto and Fannin streets, was commenced under and by virtue of permission obtained by the plaintiff from the defendant, then your verdict should be for the plaintiff. Or if you believe from the evidence that the work of constructing said switch was originally begun by the plaintiff without the consent of defendant, yet if you believe from the evidence that the defendant had notice or knowledge of the fact and made no objection to it until it was nearly completed, and the plaintiff had expended a considerable amount of money on it; and if you further believe from the evidence that switches are incident to all railways, and that the switch in question is necessary to the operation of plaintiff's railway, and that it can not be operated successfully or profitably without said switch; and if you further believe from the evidence that the main line of plaintiff's railway was laid on Commerce Street from Fannin Street to the eastern corporate limits of the city of Houston within twelve months from the 24th day of June, 1889, then you will find for plaintiff as to the Fannin Street switch."

The grant of the right to construct the railway carries with it, as an incident, the right to construct such turnouts and switches as may be necessary for the successful operation of the road.

The same question is brought before us by the cross-assignments of appellee, taken upon its offer to prove by a witness at the trial what switches, sidetracks, and turnouts were incident and necessary to all railways, and to prove at what places switches were necessary upon plaintiff's road when completed. This evidence tendered by the railway company was excluded by the court, on the ground that "until plaintiff applied to the city council and was refused permission to put in additional switches the court has no authority to act."

We think this conclusion of the court was correct. The right of the city to be consulted about the situation and construction of the sidetracks, turnouts, and switches is of equal dignity with the right of the railway company to construct them; and until it can be shown that the city has waived its privilege or declined to act, the railway company is not entitled to a writ of injunction in that respect.

We do not find in the record any evidence proper to be considered of the consent of the city to the construction of the switch on Commerce Street, between San Jacinto and Fannin streets, justifying the charge on that issue. The consent of the city council should be applied for, and if given should be shown.

The city by its repealing ordinance involved the right of the railway company to continue its work of construction in so much doubt as to justify its discontinuance of the work until the issues should be judicially determined, and we think that the court correctly directed that the time intervening between the passage of that ordinance and the final determination of this cause should not be estimated against the railway company.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered May 13, 1892.

A motion for rehearing was refused.