## Indiana Railways and Light Company *v.* City of Kokomo et al.

[No. 22,465.   Filed May 4, 1915.   Rehearing denied October 13, 1915.]

1. Railroads.—*Franchise Ordinance.—Power to Construct Lateral Track.—"Sidings".—"Switches".—"Turnouts".*—Under an amendment to a city ordinance granting a franchise to an electric railroad company to use certain streets, which prohibited the company from extending tracks of any character into streets, avenues or alleys not then occupied by its railway system, as well as the construction of double tracks, except turnouts and switches, without first obtaining the consent of the common council, the company could not, without such consent, build a track approximately at right angles to its main track and running through a public alley to its power plant about 350 feet distant, since the terms "sidings", "switches" and "turnouts", relate to short tracks at the side of a railroad, lying parallel to the main track, or nearly so, and do not include an extension of such character as to be properly termed a lateral road.   p. 546.

2. Railroads.—*Franchise Ordinance.—Power to Construct Lateral Track.*—Where the franchise ordinance granting the use of certain streets for railroad purposes was amended so that the company could not construct its tracks upon other streets or alleys than those at the time occupied by it without first obtaining the consent of the common council, the company could not build a lateral track through a public alley to a power house subsequently erected by it at a point remote from its tracks, without first procuring such consent, since the right to do so neither existed under the law nor accrued to it by reason of the erection of such building.   p. 548.

3. Municipal Corporations.—*Railroads.—Extension of Franchise Rights.—Statutes.*—Under §8696 Burns 1914, Acts 1913 p. 253, giving to the board of public works of a city power to authorize the use of streets by railroads and other public utility companies, and §8697 Burns 1914, Acts 1905 p. 219, §94, providing that such board shall have general supervision over the streets and alleys, unless otherwise provided by the act, such board can not by mere resolution authorize a railroad company to make extensions of its tracks upon streets or alleys of the city not already occupied by it, since the granting or extending of such franchise rights is further controlled by §8939 Burns 1914, Acts 1905 p. 219, §254, which contemplates that a contract for the granting of such rights shall be entered into with the board and thereafter ratified and confirmed by an ordinance of the common council.   p. 549.

4. MUNICIPAL CORPORATIONS.—*Acts of Officers.—Estoppel.*—The act of a city treasurer in accepting the rental agreed to be paid by a railroad company for the use of a city lot over which the company built a track did not estop the city from enforcing the removal of that portion of the track built through a public alley without the consent of the common council, as required by the franchise ordinance.  p. 551.

From Howard Circuit Court; *William C. Purdum,* Judge.

Action by Indiana Railways and Light Company against the city of Kokomo and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Bell, Kirkpatrick & Voorhis,* for appellant.
*Harness & Moon* and *J. C. Herron,* for appellees.

SPENCER, J.—This is an action by appellant against appellees praying for a temporary restraining order and asking that, on final hearing, appellees be perpetually enjoined and prohibited from tearing up or removing a certain turnout or switch constructed and being constructed by appellant company. The temporary restraining order was granted but, on final hearing, the same was dissolved and judgment rendered in favor of appellees. This appeal follows.

On December 4, 1890, appellee city of Kokomo, by ordinance, granted to the Kokomo City Street Railway Company, one of the predecessors of appellant, a franchise to construct, extend, maintain and operate a passenger railway in and on the streets and alleys of said city, "with the right to lay down and construct all necessary and convenient tracks, * * * turnouts and switches in and upon, along and over the streets, alleys and bridges of said city." Said ordinance provided further "that double tracks shall only be laid upon any street after application shall have been made therefor by said company to the common council of said city and permission granted, except turnouts and switches." The original ordinance granting this franchise was subsequently amended from time to time and each amendment was accepted by appellant's predecessor in title. On August 10, 1903, the fol-

lowing section was incorporated therein and now forms a part of the franchise under which appellant operates: ''No extension of tracks shall be made and no tracks shall be laid in, upon, over or along any street, avenue or alley of said city by grantee, its successors or assigns, except those now occupied by it for such purposes, and no double tracks except turnouts and switches shall be laid in any part or portion of said city without first obtaining permission so to do by an ordinance or resolution duly adopted by the common council of said city.''

On March 11, 1912, appellant's immediate predecessor in title, the Kokomo, Marion and Western Traction Company, entered into a certain written agreement with appellee city of Kokomo, by and through the latter's board of public works, for the construction and maintenance of a certain spur track from the traction company's main tracks on South Main Street in said city to the power plant of said company, a distance of about 350 feet. This track was to extend in a westerly direction from said main tracks, approximately at right angles thereto, running through one public alley and intersecting another, and finally crossing a strip of open ground owned by said city before it reached appellant's property. It was further agreed that the traction company was to pay to the city an annual rental of $25 for the use of said strip of open ground. No action was ever taken on said agreement by the common council of the city of Kokomo and on November 25, 1912, said agreement was formally rescinded by the board of public works of said city. On December 7, 1912, appellant succeeded to the rights and liabilities of said Kokomo, Marion and Western Traction Company and three days later it was served by said board of public works with a formal notice to remove the switch and spur track then being constructed in accordance with the agreement above referred to. On December 11, 1912, this suit was instituted and a temporary restraining order then

granted to prevent appellees from removing said switch and track. On December 24, 1912, pending the final hearing in the cause, appellant paid to the treasurer of appellee city the sum of $25, as rental under the agreement of March 11, and received from him a receipt therefor.

In support of its contention that, on final hearing, the court erred in refusing to perpetually enjoin appellees from removing the track in question, appellant takes the

1. position that it had an express right under its franchise to construct said track. If we concede that appellant is correct in asserting that the clear intent and spirit of the several ordinances mentioned above is to permit the construction of necessary turnouts and switches, without the company making application or procuring additional permission therefor, it still does not follow that appellant is thereby given the right to construct the track in controversy. Said track is not a switch or turnout, within the meaning of the ordinance. In the case of *Philadelphia* v. *River Front R. Co.* (1890), 133 Pa. St. 134, 139, 19 Atl. 356, it is said: "The words, sidings, switches, and turn-outs, in relation to railroads, are of course of modern growth, and, not only in popular use, but in the dictionaries, are treated as to some extent interchangeable. Thus, the only definition that Webster gives of siding is 'the turn-out of a railroad', (noted as English,) and turn-out is defined as 'a short side track on a railroad which may be occupied by one train while another is passing on a main track; a siding.'" A similar definition is found in *Bridgewater* v. *Beaver Valley Traction Co.* (1906), 214 Pa. St. 343, 347, 63 Atl. 796, where it is said: "The law attaches no peculiar meaning to the words double track and turn-out. They are not technical, but in common and general use, and anyone with the least familiarity with railroads or railways can distinguish between them. A turn-out in a railway is a short line of track, having connection by means of switches with the main track. By means of it a single track road may be used by cars moving in oppo-

site directions, the turn-out affording accommodation at the side of the track for one car while the other is passing over the main track at that point." It will be observed from the above definition that one characteristic of a turnout or siding is that it lies parallel to the main track or nearly so. This characteristic is expressly recognized in the case of *City of Memphis* v. *St. Louis, etc., R. Co.* (1910), 183 Fed. 529, 539, 106 C. C. A. 75. The court therein says: "The phrases 'turnouts' and 'switches' in our opinion clearly relate to tracks in the nature of side tracks, adjacent to and used in connection with another line of track, and manifestly do not refer to a track such as that in dispute which branches off entirely from the existing line and extends laterally to a distant objective point, and which can only be properly described as a lateral road." Section 2 of the franchise ordinance, as amended on August 10, 1903, prohibits appellant from extending tracks of any character into streets, avenues or alleys not then occupied by its railway system, without the consent of the common council of appellee city. It further prohibits appellant from constructing double tracks in any part of said city, except such turnouts and switches as may be needed, without first obtaining the same consent. This ordinance, which was accepted by appellant's predecessor and now binds appellant, does not expressly, or by necessary implication, authorize the construction of the track in controversy without the consent of the common council first being obtained.

Appellant next contends that this case falls within the rule that the grant of a right to construct a street railway carries with it, as an incident, the right to construct such turnouts and switches as may be necessary for the successful operation of the road. *Mayor, etc.* v. *Houston, etc., R. Co.* (1892), 84 Tex. 581, 595, 19 S. W. 786; *Cleveland, etc., R. Co.* v. *Speer* (1867), 56 Pa. St. 325, 335, 94 Am. Dec. 84; *Lake Shore, etc., R. Co.* v. *Baltimore, etc., R. Co.* (1894), 149 Ill. 272, 281, 37 N. E. 91. What we have said heretofore

renders this argument ineffective as the track in question does not fall within the rule laid down in the cases cited. To quote from the case of *Lake Shore, etc., R. Co.* v. *Baltimore, etc., R. Co., supra,* at page 281: "A lateral road is but another name for a branch road; and a lateral or branch road is one, which proceeds from some point on the main trunk between its termini, and is an appendage to and properly a part of the main road. * * * The right to construct a branch or lateral road will generally depend upon the language of the charter, or of the provisions of the general statutory law under which the railroad corporation is organized; and such right does not exist where the power to build the branch road is not conferred by the charter, either in express terms, or by necessary implication. The power to construct branches of a railroad is not incidental to the power to construct the road."

On the trial of this cause appellant was permitted to introduce evidence showing that one of its predecessors had constructed the power plant in question at a considerable expense and that the operation of said plant would be interfered with if a connection with appellant's main tracks should be denied, such connection being necessary for the proper removal of ashes from said plant. It appears, however, that the power plant was constructed subsequent to the year 1903. We have already determined that, after August 10, 1903, appellant, or its predecessors, had no power either by virtue of the franchise or as an incident to the operation of the railway system, to construct for any purpose a branch or lateral track which should extend over or across any street, avenue or alley not then occupied by said system, without first obtaining the consent of the common council of the city of Kokomo. No such right existed under the law and it could not accrue from the act of appellant's predecessor in constructing the power plant, after said date, at a point not accessible to its existing tracks.

The next proposition advanced by appellant involves a

construction of §93 of the Towns and Cities Act of 1905.

Acts 1905 p. 219, §8696 Burns 1908. In 1891 the

3. legislature of Indiana enacted the so-called Indianapolis City Charter Act and provided therein that the board of public works should have power "to authorize *and empower by contract* (our italics), telegraph, telephone, electric light, gas, water, steam or street car or railroad companies to use any street, alley or public place in such city, and to erect necessary structures therein, and to prescribe the terms and conditions of such use, to fix by contract the prices to be charged to patrons: *Provided,* That such contract shall in all cases be submitted by said board to the council of such city, and approved by them by ordinance before the same shall take effect." Acts 1891 p. 137, §3830 Burns 1901. Section 93 of the Towns and Cities Act of 1905 is modeled on the above section and substantially re-enacts the same but with some changes in the phraseology. It contains a provision that the board of public works shall have power "to authorize telegraph, telephone, electric light, gas, water, steam, street car, railroad, or interurban companies to use any street, alley or public place in such city, and erect necessary structures therein; to prescribe the terms and conditions of such use and to fix by contract the prices to be charged to patrons: *Provided,* That such contract shall in all cases be submitted by such board to the common council of such city and be approved by ordinance before the same shall take effect."

It will be observed that the phrase "*and empower by contract*" which is used in the act of 1891 is omitted from the act of 1905, both as originally enacted and amended in 1909 (Acts 1909 p. 465) and in 1913. Acts 1913 p. 253, §8696 Burns 1914. Appellant contends that such omission is significant; that it indicates an intention on the part of the legislature to authorize the board of public works to grant by resolution as well as by contract, the right to use a street, alley or other public place without requiring the approval

of such resolution by the common council. In this connection appellant calls attention to the fact that §94 of the Towns and Cities Act (§8697 Burns 1908, Acts 1905 p. 219) gives to the board of public works general supervision over the streets and alleys of cities of the fourth class, such as Kokomo, and contends that such provision amounts to but little if such board can grant no privilege of any kind to a street or alley, except by contract to be ratified by ordinance by the common council. This contention is much broader than a proper construction of §8697, *supra*, will warrant. It provides that the board of public works shall "have general supervision over the streets, alleys, sewers, public ground and other property of the city, *unless otherwise provided in this act.*" (Our italics.) The privilege which appellant is seeking to obtain amounts to an extension of its franchise rights and as such is controlled by §254 of the Towns and Cities Act. §8939 Burns 1908, Acts 1905 p. 219. That section authorizes any city or town to enter into a contract with any person, corporation or association "to build or extend railroads, interurban or street car lines", but provides that "before any such contract shall be made by any city of the first, second, third or fourth class, such contract shall be first agreed to by the board of public works of such city, after which agreement such board shall cause a proper ordinance approving and confirming such contract to be presented for adoption by the common council of such city." This proviso refers to all contracts authorized by §254 and, when read in connection with that part of §8696 Burns 1908, *supra,* which is quoted above, makes it clear that the omission from the latter of the phrase *"and empower by contract"* does not authorize a board of public works to extend by resolution the franchise rights of a railroad, interurban or street car line. Such rights may be granted in the first instance only with the approval of the common council and they may be extended only in like manner. Section 8696, *supra,* is a general grant of power to the boards of public

MAY TERM, 1915. 551

Vandalia R. Co. *v.* Terre Haute, etc., Brick Co.—183 Ind. 551.

works in cities of all classes but it is not exclusive and must be interpreted in the light of special provisions as to the particular powers and duties of such boards. The power to grant or extend corporate franchises is further controlled by §8939, *supra,* which requires that every such grant or extension shall be ratified by the common council in cities of the first, second, third and fourth classes. We therefore hold that the agreement of March 11, 1912, unapproved by the common council of the city of Kokomo, conferred no rights on appellant's predecessor and is not binding on said city. Finally, it is contended that the act of the city

4. treasurer in accepting appellant's tender of rental now serves to estop the city in this proceeding. We can not so hold. Judgment affirmed.

NOTE.—Reported in 108 N. E. 771. Rights, duties and obligations of street railroads with regard to streets, see 25 Am. St. 475. As to estoppel of town or municipality to object to street railway in street by acquiescence or consent to its construction or use, see 7 L. R. A. (N. S.) 1187. See, also, under (1) 36 Cyc. 1389; 36 Cyc. 441; 37 Cyc. 658; 39 Cyc. 656; (2) 36 Cyc. 1389; (3) 36 Cyc. 1379; (4) 28 Cyc. 465.