Mitch Gray et al. v. Dallas Terminal Railway & Union Depot Co.

No. 1469.

1.  **Municipal Corporation—City Ordinance—Grant to Railway Company of Right to Use Street.**
In an action involving the right of a railway company to construct its line of road over certain streets, a city ordinance granting it such privilege and clearly specifying the streets in controversy will not be held void because not sufficiently specific as to other parts of the line.

2.  **Same—Construction—Extent of Grant.**
Where a city ordinance grants to a railway company a right of way over certain streets, and in a separate section authorizes it to construct at convenient points on its line roundhouses, yards, shops, switches, depots, and sheds, this does not give the company the right to place the things mentioned in the latter section in the streets, but only within the city limits.

3.  **Same—Damage to Abutting Lot Owners—Injunction.**
In an action to restrain a railway company by injunction from constructing its road upon certain streets of a city, because the owners of a majority of front feet thereof were not willing to the grant of such privilege, the amount of damage such construction will severally cause to such owners is not a matter to be adjudicated.

4.  **Same—Taking of Property—Constitutional Provision—Damages Paid in Advance.**
The appropriation by a railroad company of a right of way over the streets of a city under a valid city ordinance granting such privilege, is not, as to damages thereby occasioned to abutting property, a taking of such property, within the meaning of section 17, article 1, of the Constitution, requiring that adequate compensation to the owners of property taken shall be first made or secured by deposit of money.

**5.   Same—Evidence—Assent of Abutting Owners—Fraud—Equitable Title.**

In an action to restrain a railway company from constructing its road along and upon certain streets, because the owners of a majority of front feet were not willing thereto, plaintiffs cannot complain of the exclusion of evidence offered to show that a city ordinance granting defendant the right of such construction had been obtained by false and fraudulent representations to the effect that the owners of a majority of front feet were willing thereto, where the court has admitted evidence to show the willingness or unwillingness of such owners, and has instructed the jury that unless the owners of a majority of front feet were willing, they should find for plaintiffs; nor can plaintiffs complain of the admission of evidence showing the written consent of certain equitable owners of such front feet property, the legal title to which was in a trustee who had declined to express himself as being either willing or unwilling.

**6.   Same—Street or Public Highway Only—Right of Abutting Owners.**

Where a street was originally dedicated as such, and is still used by the public as a street, the fact that several railway companies have obtained and are using a right of way on and along it, does not deprive it of its character as a street and convert it into a "highway" only, as affecting the rights of the owners of property fronting on a street to object to another company constructing a railroad thereon without their consent.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.

*Cobb & Avery*, for appellants.—1.   Under the charter of the city of Dallas an ordinance granting the right to build a railroad over the streets of the city, without naming or describing such streets, is void. Charter of City of Dallas, secs. 116 and 117; Railway v. Chicago, 121 Ill., 176.

2.   The supreme and first use of a street is for the ordinary travel over it, and the right of a railroad to operate its trains across it is subordinate to the use of it by the general public, and an ordinance granting a railroad company the right to use a street for switches, side tracks, car sheds, depots, etc., is void.   Stevenson v. Railway, 31 S. W. Rep., 793; Lockwood v. Railway, 26 S. W. Rep., 698; Mahady v. Railway, 91 N. Y., 148; 43 Am. Rep., 661; Railway v. Carson, 66 Texas, 345; Dwyer v. Hosea, 1 Posey, 596; Barney vs. Keokuk, 94 U. S., 324; Knapp v. St. Louis Co., 28 S. W. Rep., 627.

3.   An abutting owner has rights in the street; damage to his property by the construction of a steam railroad in the street constitutes a taking of his property, within the meaning of that term in our constitution; proof of such damage is admissible, and when such damage is established, he is entitled to an injunction restraining the construction of such railroad, until his damage is paid, or his rights are condemned in an appropriate proceeding for that purpose, and compensation paid to him, or deposited in court.   Railway v. Jennings, 76 Texas, 373; Dwyer v. Hosea, 1 Posey, 596; Railway v. Fuller, 63 Texas, 467; Story v. Railway, 90 N. Y., 122; 43 Am. Rep., 146; Lahr v. Railway, 104 N. Y., 268; Adams v. Railway, 12 Am. St. Rep., 644; White v. Railway, 18 S. E. Rep., 330; Railway v. Lawrence, 38 Ohio St., 41; Knapp v. St. Louis Co., 28 S. W. Rep., 627; Dillon on Mun. Corp., secs. 723c, 723d.

4.   When an ordinance of a city council is procured by fraud, such

fact may be proved and the ordinance declared void, at the instance of parties injuriously affected thereby.    1 Dill Mun. Corp., 311.

5.   Defendant introduced in evidence two letters to it, dated March 22, 1895, written by Mrs. Hatch, Mrs. Noble, Mrs. Stewart and R. H. Stewart, giving their consent to the building of the defendant's railroad over South Austin street.   To the introduction of these letters plaintiff and intervenors objected because they were dated and delivered March 22, 1895, long after the passage of the ordinance of February 5, 1895, and could not affect its validity, and said parties had testified that they knew nothing about said ordinance until after its passage; and the consent of a majority of the front feet on said street was a jurisdictional fact, and must have been obtained before the city council had any right or authority to pass said ordinance.   Roberts v. Easton, 19 Ohio St,. 78; Dill. Mun. Corp., sec. 720.

6.   The building of an additional railroad track on a street is an additional burden, and requires the consent of the owners of a majority of the front feet thereon.   Roberts v. Easton, 19 Ohio St., 78; Dillon on Mun. Corp., sec. 720; Railway v. Reed, 41 Cal, 256; Railway v. Jennings, 76 Texas, 373.

*Simkins & Simkins*, for appellee.—1.   While the Constitution forbids a railway company, in the exercise of eminent domain, to go upon and take possession of private property without condemning the same and making provisions for the payment thereof in advance, it has no reference to the streets and highways in a city or incorporated town, against which condemnatory proceedings will not lie, and over which a railway company cannot lay its track without consent of the city council.   Railway v. Lagario, 25 S. W. Rep., 1022, 79 Texas, 325; City Charter, secs. 113, 116 and 117; City Ordinances, p. 118, art. 394; Sayles' Supp., art. 375; Sayles' Civil Stats., art. 4173.

2.   If the owners of a majority of front feet are willing for the construction of the railway along their street, and it is built with the consent of the city council, an abutting owner has no right to enjoin the building, but, if he has not consented, may recover any injury arising from the construction of the railway.   Rosenthal v. Railway, 79 Texas, 325; Osborne Co. v. Railway, 147 U. S., 248; 20 S. W. Rep., 65; 25 S. W. Rep., 1022.

3.   The sole ground of attack upon the validity of the ordinance being that the abutting owners were unwilling to have the railway constructed on their streets, at and before the passage of said ordinance, and that issue having been presented to the jury, and the jury having found in favor of defendant, and there being evidence to sustain said finding, the court did not err in rejecting the evidence offered to show the ordinance was procured through fraud.

LIGHTFOOT, Chief Justice.—The following statement of appellants is adopted:  "This was a suit by Mitch Gray, administrator of Mrs.

S. H. Cockrell, against appellee, to enjoin appellee from constructing and operating a double track steam railway and telegraph line along and over North Market street, South Lamar street, Water street, Broadway street and South Austin street, in the city of Dallas. The plaintiff alleged that under its charter the city of Dallas had no authority to grant permission to defendant to build its road over these streets, unless the owners of a majority of the front feet of property on each street were willing; that on February 5, 1895, the city council of the city of Dallas passed an ordinance granting this permission, and that said owners were not willing; he set out the owners of the property on each street who were not willing, specifying the front feet owned by each; and among others, he alleged that H. C. Coke owned, as trustee, 1046½ front feet on South Austin street, and the Missouri, Kansas and Texas Railway Co., and the Texas and Pacific Railway Co. certain front feet on Broadway street; he also alleged that this ordinance was passed and approved by reason of the fraudulent representations of defendant in presenting to the city council that the owners of a majority of the front feet were willing; he also alleged that the property owned by the estate on these streets would be damaged $10,000 by the building of this road.

"The Missouri, Kansas and Texas Railway Co., Texas and Pacific Railway Co., F. M. Cockrell, Alex. Cockrell, Ettie Cockrell, Mrs. G. Kannady, guardian of Clarence and Louisa Cockrell, and E. S. Edwards were allowed to intervene and adopt the allegations of plaintiff's petition.

"The defendant denied all the allegations of plaintiff and intervenors; justified its acts under said ordinance of February 5, 1895, a copy of which was attached to its answer; claimed that Broadway street was used exclusively by railroads, and was a railroad highway, and that the consent of the owners of the property on it was not necessary; and that Mrs. S. H. Cockrell had given her consent for all railroads to run over Water street.

"The case was tried before a jury, and resulted in a verdict and judgment for defendant. Plaintiff, as the administrator of Mrs. S. H. Cockrell, and intervenor Mrs. G. Kannady, as the guardian of Clarence and Louisa Cockrell, minors, have appealed."

It was proved on the trial that on February 5, 1895, the city of Dallas, acting under its charter, passed an ordinance, which was approved by the mayor of said city February 6, 1895, granting to appellee the right to construct, operate and maintain within the corporate limits of the city of Dallas a double track terminal railroad with sidetracks and switches, together with all depots and buildings necessary for the convenient handling of passengers and freight; and it also granted in said ordinance the right of way to said appellee along and across certain named streets, avenues and public ways in said city, including the streets set out in the plaintiff's petition.

In regard to North Market street and South Lamar street, there is no evidence tending to show that the property owners along the same

were not willing to such right of way and the construction of said road along such streets.

In regard to Water street, the court charged the jury that under the terms of the deed of dedication in evidence before them, made by Mrs. S. H. Cockrell, July 27, 1886, this street is expressly dedicated, not only to the Gulf, Colorado and Santa Fe Railway Co., but to such other railroads as may desire to run their lines over and along said street, and they were instructed to find in favor of the defendant company as to said Water street. Appellants have not brought up in the statement of facts this deed, and in the absence of it, the presumption is that the terms of the deed were such as to fully authorize the charge.

In regard to Broadway street, it was fully proved that there were a number of railroad tracks already in the street; but that said street was also used for wagons and drays, and that the same is a public street in the city of Dallas, and that the owners of a majority of front feet, exclusive of street intersections on said Broadway street, were not willing that the city council should grant the right of way over said street, or that the said appellee should construct its line of railway over said street.

In regard to South Austin street, the testimony was conflicting; but from the evidence, and the verdict and judgment thereunder, we are justified in the conclusion that at the time the city council passed said ordinance giving the right of way to appellee over said street, the owners of a majority of front feet along said street, exclusive of street intersections, were willing that said privilege should be granted, and that said road should be constructed along said street.

The appellants have filed forty-one assignments of error, and it would be impracticable, even if we had the time, to enter into a discussion in detail of each one of these assignments separately, and we will only present such of them as we consider important in determining the questions involved. As to North Market, South Lamar and Water streets, we think it is wholly unnecessary to consider any of the assignments, as the issues involved with those streets seem to be clearly settled upon the facts.

1. The first point raised by appellants in their second and thirtieth assignments of error, is to the effect that the ordinance of February 5, 1895, granting the privilege to appellee over said streets was not sufficiently specific to indicate the streets over which said line of railroad should run. As to the streets in controversy, there can be no doubt that they are clearly specified; and even if the ordinance should not be so specific in regard to other portions of its line, still this would not render the privilege void as to the streets in controversy in this case.

2. In their second-a and second-b assignments of error, appellants contend that the ordinance of February 5, 1895, is void because it authorizes the appellee to construct in the streets therein named a double track railroad, and also side tracks, switches, depots, sheds, yards, round houses, and all needful facilities, connections and appurtenances, because such use of the streets is a perversion of the same from their

original use and inconsistent with their use by the public, and destroys them as a public thoroughfare and street. The privilege granted to the defendant by the city council will not bear the interpretation placed upon it by these assignments. The city council under the third section of the ordinance merely grants the right of way over the streets named, and section four of the ordinance grants the appellee the right to construct at convenient points on its line of railway, yards, round houses and shops, with all side tracks and switching facilities in connection with its terminal system, and to erect depots and sheds of sufficient capacity and strength, with all needful appurtenances to meet the necessities of the business of said company. This does not give to the company the right to put these things in the streets; being wholly separated from the section of the ordinance which grants the right of way over the streets, it was merely intended by section four to grant the privilege of erecting the improvements mentioned inside of the city limits.

3.   Under the ninth and twenty-ninth assignments of error, appellants complain at the court's refusal to hear evidence or to charge the jury upon the amount of damage to the property owners along such streets if said terminal railroad should be constructed along the same in accordance with the privilege granted. The pleadings of the parties below did not properly raise the issue as to the amount of damages; this suit for injunction being based upon the idea that the owners of a majority of front feet on said streets, exclusive of street intersections, were not willing that such privilege should be granted, or that such line of railway be constructed. Section 116 of the charter of the city of Dallas reads as follows: "The city council shall have the sole authority to grant, upon such terms as it may see fit, the right to any person, corporation or company to make and construct street railways and other railroads in any street or highway inside the city and receive compensation therefor, and to regulate and control the use thereof; provided, the owners of the majority of front feet, exclusive of street intersections, on each street composing the line of road are willing."

This is not a suit by plaintiffs below to recover damages, nor is it a suit by the appellee to condemn the right of way along the street. If the owners of a majority of front feet, exclusive of street intersections, along said streets were willing, then the city council had the exclusive right to grant the privilege to the railway company to construct its line of road along such streets; but, it is contended by appellants that, although the construction of the line along the streets does not take any part of the lot owned by the several owners, yet, inasmuch as it takes away part of their easement in such streets, that this is such a taking of property under the constitution that the railway company will be compelled to pay such damages before it can be taken. This position cannot be maintained under the authorities. Our Constitution, art. 1, sec. 17, provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the

use of the State, such compensation shall be first made, or secured by a deposit of money."

.Under this section of the Constitution does the appropriation of the right of way over the streets named, with the consent of the city council, the owners of a majority of front feet, exclusive of street intersections, being willing, constitute a taking of property so that it is necessary that payment shall be first made before such right of way can be used? It is so stated in the opinion of our Supreme Court in the case of Railway v. Fuller, 63 Texas, 469. The right of way had been granted by the city of Houston over St. Emanuel street. The court said: "The word 'property' as used in the section of the Constitution referred to, is doubtless used in its legal sense, and means not only the thing owned, but also every right which accompanies ownership and is its incident. Thus considered, under the rules established by the great weight of judicial decisions and opinions of elementary writers eminent for their learning, the facts of this case amount to a taking of private property for public use * * *. If, however, there has been no taking of the property of the appellee, within the meaning of the constitution, there can be no doubt that it has been damaged," etc.

That case was a suit for damages by the appellee after the road had been constructed and operated over the street, and involved the question of damages only. The question of the taking of private property was not involved in the case, and we do not think the court intended the above argumentative statement as an authoritative settlement of the question. On the contrary, subsequent opinions of the Supreme Court seem to point to a different conclusion. In the case of Railway v. Hall, 78 Texas, 172, Judge Gaines in referring to the Fuller case above, says: "In Railway v. Fuller, 63 Texas, 467, damages were allowed the plaintiff for an injury to his property resulting from the construction and operation of the defendant's railroad along a street in front of his lots. The plaintiff having an easement in the street peculiarly essential to the full enjoyment of his property, the court held that the appropriation of the street was a taking within the meaning of the Constitution. But the court also say: 'If, however, there has been no taking of the property of the appellee within the meaning of the Constitution, there can be no doubt that it has been damaged, if the evidence offered to support the averments of the petition be true. The word damaged is evidently used in the sense in which the word injured is ordinarily understood. By damage is meant, every loss or diminution of what is a man's own, occasioned by the fault of another, whether this results directly to the thing owned or be but an interference with the right which the owner has to the legal and proper use of his own. If by the construction of a railway or other public work an injury peculiar to a given property be inflicted upon it, or its owner be deprived of its legal and proper use or of any right therein or thereto, that is, if an injury not suffered by that particular property or right in common with other property or rights in the same community or section by reason of the gen-

eral fact that the public work exists be inflicted, then said property may be said to be damaged.' * * * We think the language quoted from the opinion in the Fuller case lays down the true rule."

The court endorses the portion quoted, which holds that the property owner may be entitled to damages, but does not seem to endorse the portion which holds that such use of the public street is a taking of private property for public use.

In the case of Rosenthal v. Railway, 79 Texas, 327, which involved the construction and operation of a railway in front of appellant's property over a public street in LaGrange, the consent of the municipal authorities having been obtained, the court said: "The company lawfully acquired the right to operate the road along the street, subject, however, to that provision of the Constitution which secures indemnity to those whose property is damaged for a public use."

This case, we think, clearly announces the correct doctrine, and is supported by the weight of authority. To place the power in the city council to give consent (the property owners being willing) for a railway company to construct its line along the public streets, would avail nothing, if it was necessary for it to condemn the right of way and pay damages to every abutting property owner before the franchise could be made available. But the rule announced in the Rosenthal case, that when the consent of the city council is properly granted, the company has lawfully acquired the right to operate its road along the street, subject to any lawful claims for damages to the property owner, is in harmony with the Constitution and the statutes under it. Const. art. 1, sec. 17; Sayles' Civ. Stats., art. 4173; Osborne v. Railway, 147 U. S., 259; Railway v. Lagario, 25 S. W. Rep., 1022. A different question might be presented in a case where the title to the street itself was in the abutting property owner.

This suit does not involve a question of damages, but is based purely upon the equitable remedy by injunction—appellants denying the right of appellee to construct its railway along the streets named. If appellee has obtained the consent of the city council, the owners of the majority of front feet, exclusive of street intersections, being willing, it has acquired the legal right to construct and operate its road, and the question of damages to an abutting property owner is one which can be settled hereafter. The court will not enjoin merely because some one may be damaged. It is well said by Chief Justice Fuller, in the Osborne case, above: "But where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damages in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial, and the remedy at law inadequate in effect, before restraint will be laid upon the progress of the public work. And if the case made discloses only a legal right to recover damages, rather than to command compensation, the court will decline to interfere." (147 U. S., 250). See Cooper v. Dallas, 83 Texas, 242; Chicago v. Taylor, 125 U. S., 164.

It is contended in the very able brief and argument of appellants that the case of Railway v. Jennings, 76 Texas, 373, is authority upon the proposition that a court of equity should interfere by injunction to restrain a railway company from appropriating a right of way under such circumstances. A careful examination of that case will show that it does not establish the proposition. In that case appellee had granted the right of way over his land to the Texas & Pacific Railway Co., reserving the fee in himself. That company having constructed its road on the right of way designated, undertook to transfer a part of its right of way to another company, which sought to fix upon the land this additional servitude without the consent of the owner. Jennings not only owned the adjacent property, but owned the fee in the roadbed itself, and was entitled to an injunction to prevent the latter company from taking his property without just compensation being first made. The question there involved is a different one from this.

4. Under their tenth assignment of error appellants complain at the ruling of the court in the exclusion of evidence offered for the purpose of showing that the ordinance of February 5, 1895, was obtained from the city council by false and fraudulent representations made, to the effect that the owners of a majority of front feet along said streets were willing. This question becomes immaterial in view of the fact that the court admitted testimony tending to show the willingness or unwillingness of the property owners along the streets in controversy, and in its charge to the jury, held that unless the owners of a majority of front feet, exclusive of street intersections, on each street, were willing, the jury should find for the plaintiffs.

But, upon the direct question involved in this assignment, it has been said by our Supreme Court, in the case of Mayor of Houston v. Railway, 84 Texas, 589, where it was claimed that false representations had been made to the city council to procure the passage of an ordinance declaring the right of way over the streets of said city, that: "We do not think that an error was committed in refusing both the evidence and the charge. It must be conclusively presumed, as the matter is now presented to us, that the ordinance expresses the purpose of the city in adopting it. Its language, and not the representations made to plaintiff or its agents, must be looked to for its meaning and application."

Mr. Dillon lays down the doctrine that an ordinance of a municipal corporation may sometimes be impeached for fraud, at the instance of persons injured thereby. 1 Dill. Mun. Corp., sec. 311. But in this case the court in its charge to the jury, and in the admission of evidence, held to the doctrine that if the owners of a majority of front feet, exclusive of street intersections, were not willing, then the ordinance was void as to such streets upon which such owners were unwilling; and the evidence excluded, as to what statements were made to the city council in that regard, would not seriously affect the issue.

5 Under the thirteenth assignment appellants complain that the court erred in admitting in evidence two certain papers, dated March 23, 1895,

purporting to be signed by Mary J. Hatch, Nettie D. Noble, Mrs. Ada R. Stewart and R. H. Stewart, giving their consent to the construction of defendant's road over South Austin street. The issue upon South Austin street as to whether the owners of a majority of front feet were willing, was closely contested. The parties named were the equitable owners of a large body of the land along that street. H. C. Coke was their trustee, holding the legal title for them, and had declined to express himself as to being willing, or unwilling, and the above named parties being the real owners, the papers introduced in evidence tended to show their willingness for the construction of the road, and were admissible.

6. In regard to Broadway street, the court submitted to the jury two special issues, (1), as to whether it was a public street; and (2), what was its width, how many railway tracks were on it, and whether it was a highway for railways.

The appellants requested the following special instructions, which were refused: "If you believe from the evidence that Broadway street is a street, then the fact that there are other railway tracks on said street would not of itself authorize the building of additional railway tracks on such street, unless the owners of a majority of the front feet, exclusive of street intersections, on said street were willing; and if you find that Broadway street is a street, and if the owners of a majority of front feet thereon, exclusive of street intersections, are not willing for the construction of defendant's road thereon, then you will find for the plaintiffs and intervenors as to that street."

Appellants also requested these instructions: "You are instructed that in determining whether Broadway and South Austin streets are so used by the public as to give the abutting property owners thereon such an interest therein as to require the willingness or consent of the majority of them, as a condition precedent to the city council giving defendant authority to build its railway thereover, it matters not whether railroad tracks are located thereon, or whether the street has been graded or paved, if it has been taken or given and used for street purposes of any character whatever by the public, the consent or willingness of a majority of the abutting property owners thereon must have been obtained before the city council could pass such ordinance, and if such consent or willingness was not obtained, you will find for the plaintiffs."

The above charges were sufficient to call the attention of the court to the issues contended for, and the court should have charged the jury that if Broadway was a street, and if the owners of a majority of front feet thereon were not willing, then the city council had no authority to grant the right of way over such street.

The second of the above charges is incorrect, in that it requires the consent or willingness of a "majority of the abutting property owners," when the statute only requires the willingness of the owners of a majority of front feet. In this connection appellants also complain that the

verdict of the jury is contrary to the law and the evidence as to Broadway street, in that the evidence showed that Broadway was a public street in the city of Dallas, open and used by the public, and that said street was not dedicated solely for railroad purposes, and was not merely a highway for railways.

Appellee's counsel have presented to us an able and learned argument attempting to show the difference between a highway and a street under the Texas statutes; but we confess, that, in view of the evidence introduced, we cannot agree with them.  The evidence was undisputed that Broadway was one of the original streets of Dallas, and was dedicated as a street by John Neely Bryan in 1855.  It was shown that several railway companies have rights of way over this street; yet the testimony in the record is not sufficient to show that these rights of way have taken away the original dedication of the property as a public street, or that it is not used as such.

There was much testimony upon the subject, but appellee's counsel in their presentation of the case have shown us no testimony proving that Broadway street is not a street in the contemplation of our law.  If there was any testimony introduced tending to show that the street, as originally dedicated in 1855, had been changed so as to make it merely a "highway," as claimed by appellee, it has not been pointed out to us by appellee's brief.  Mr. Anderson, in his definitions of a street, among others, gives the following:  "In common parlance, a road or highway, prima facie, a public highway, a public way, highway or townroad, or a way which has become public by dedication or prescription."  Anderson's Law Dictionary, 981.

All streets are highways, yet all highways are not streets.  By our Constitution (art. 10, sec. 2), all railroads are declared to be public highways, and yet where one or more of such roads are along a public street, the fact of its being a highway does not necessarily take away its character as a public street.

The fact that the charter of the city of Dallas authorizes the city council to grant the right of way "over any street or highway in said city," will not justify a departure from the well settled definition of those terms, so as to convert a well established street into a different character of highway, upon such testimony as is contained in the record before us.

As to North Market street, South Lamar street, Water street and South Austin street, we find no error in the judgment, and it is affirmed; as to that portion of the judgment affecting Broadway street, for the reasons above indicated, the judgment is reversed and the cause remanded.

*Reversed and Remanded.*

Delivered March 28, 1896.

Writ of error refused.