STATE EX REL. KNIGHT ET AL., APPELLANTS, *v.* HELENA
POWER & LIGHT CO., RESPONDENT.

[No. 1,316.]

[Submitted February 13, 1899.  Decided March 31, 1899.]

*Street Railroads—Duty to Operate—Ordinance—Mandamus.*

An ordinance granting a street railway company the right to construct and operate lines in certain streets, and providing that, if the company shall not construct and operate a certain portion of the line within a certain time, the right shall be forfeited, as to the parts where the failure occurs, does not impose on the company the duty to continue the operation of any portion of the line; and *mandamus* cannot issue to compel it to do so.

*Semble:*—There may be cases where failure, on the part of a street railway company, to operate a part of its line, might be ground for forfeiting its franchise to the whole line; the remedy in the case at bar, however, is to forfeit the franchise to operate the branch line in controversy.

*Appeal from District Court, Lewis & Clarke County; Henry C. Smith, Judge.*

APPLICATION by the State, on the relation of E. W. Knight, Jr., and another, against the Helena Power & Light Company, for *mandamus* to compel respondent to operate a portion of its line of street railway in the city of Helena.   From a judgment sustaining a demurrer to the application, relators appeal. Affirmed.

*Clayberg, Corbett & Gunn,* for Appellants.

The right and privilege of occupying the streets and avenues of the city of Helena for the purpose of constructing, maintaining and operating a street railroad thereon is a franchise.   The ordinances made a part of the amended petition when accepted constituted contracts between the city and the grantees named therein. ( *City Ry. Co.* v. *Citizens' Street Ry. Co.*, 166 U. S. 557; Cook on Corporation Law, Sec. 913 and note; *Supply Co.* v. *Railroad Co.*, 26 N. E. 189; *Africa* v. *Board of Mayor, etc.*, 70 Fed. 729; *Mayor* v. *Street Railroad Co.*, 19 S. W. 127.)   The grant of a right to lay down,

maintain and operate a street railroad in the streets of a city, when accepted and acted upon, vests the grantee with an easement and property in the streets. (Dillon on Municipal Corporations, Sec. 68 a; *Africa* v. *Board of Mayor, etc.*, 70 Fed. 729; *Mayor* v. *Africa*, 77 Fed. 507; *People* v. *O'Brien*, 111 N. Y. 1.) The powers of a municipal corporation in respect to its streets are held in trust for the public, and it is not authorized to permit private persons or corporations to occupy the same for purely private purposes. (Dillon on Municipal Corporations, Sec. 716; *Savage* v. *City of Salem*, 31 Pac. 832; *Florida R. Co.* v. *Ocala R. Co.*, 22 So. 692.)

The consideration and benefit to the public supporting this contract and grant is the continued operation of the road. (*City Ry. Co.* v. *C. S. Ry. Co.*, 166 U. S. 557; *Wright* v. *Milwaukee El. Ry. Co.*, 60 Am. St. Rep. 74 (95 Wis. 29); *Mayor* v. *Dry Dock Co.*, 30 N. E. 563; *Thomas* v. *Ry. Co.*, 101 U. S. 71; IV Thompson on Corporations, Sec. 5355; *Gibbs* v. *Gas Co.*, 130 U. S. 396; *Chicago Gas L. Co.* v. *Gas L. Co.*, 2 Am. St. Rep. 124; Art. XV, Sec. 17, Constitution of the State of Montana; *City of Potwin Place* v. *Topeka Ry. Co.*, 37 Am. St. Rep. 312.)

The street railway company can be compelled by *mandamus* to continue the operation of its road. (*State ex rel. Grinsfelder* v. *Spokane Street Ry. Co.*, 53 Pac. 719; *Antonio Street Ry. Co.* v. *State of Texas*, 30 S. W. 266 (10 Tex. Civ. App. 12.)

*Toole, Bach & Toole* and *Massena Bullard*, for Respondent.

**PER CURIAM.**—Relators applied to the District Court of Lewis and Clarke County for a peremptory writ of mandate requiring the respondent, a street railway company, to operate a portion of its system. The affidavit in support of the petition or application discloses the following facts: That respondent is a corporation under the laws of Montana, and for several years last past has been, and now is, engaged in the business of operating street railways in the city of Helena; that on July 13, 1889, and on October 8, 1890, by two sev-

eral ordinances of the said city there were granted to the pre-
decessors in interest of the respondent the right, license,
franchise and easement of laying down and maintaining in cer-
tain streets of Helena a street railway track, and of operating
a line of street cars thereon, by which ordinances it was,
among other things, substantially provided that unless the
grantees, or their successors or assigns, should within a cer-
tain period of time construct and operate a designated portion
of the line of railway, the right and privilege so granted would
be forfeited as to the parts of the line where the failure oc-
curred; that by Section 12 of Article VIII of Chapter XIX
of the Revised Ordinances of the City of Helena of 1890 it is
provided:    ''On all routes the cars shall be run for such num-
ber of hours each day, and at such intervals, and allowed to
stand for such length of time at either terminus of the road,
as the city council may from time to time direct by resolution
or order;'' that in 1894 respondent succeeded to the rights of
the original grantees named in the ordinances; that the re-
spondent, after acquiring the rights granted by the ordinances,
operated the railways from 1894 until June 30, 1898, and that
on or about the date last mentioned it refused to run its cars
on its line known as the ''Lenox Addition Line,'' or to oper-
ate the same, although requested so to do, and has abandoned
the same, and threatens to, and will, unless otherwise directed,
take up and destroy the track built to and through the Lenox
addition; and that the railway company is fully equipped with
apparatus necessary for its operation.    Respondent demurred
for insufficiency.    The demurrer was sustained, and a judg-
ment entered dismissing the application.    Relators appeal.

The writ of mandate may be issued to compel the perform-
ance of an act which the law specially enjoins as a duty result-
ing from an office, trust, or station.    (Code of Civil Proced-
ure, Sec. 1961.)    Is the operation of the line of street railway
which respondent has abandoned an act specially enjoined as a
legal duty?    We think it is not.    It does not appear that the
charter of respondent, or the statute under which it was or-
ganized, requires it to maintain or operate a line of railway;

nor is it claimed that the State has delegated to respondent the right to exercise the power of eminent domain. It does not appear, indeed, whether it owes its existence to a special act of the Legislature, or to a compliance with the terms of some general act authorizing the formation of corporations thereunder. At the argument the statement was made that respondent was organized and exists under Chapter XXV, Division 5, Compiled Statutes of 1887, entitled "Corporations for Industrial or Productive Purposes;" but nothing contained in that chapter may be so interpreted as to impose upon the respondent the obligation to continue the operation of any portion of its system of railways. The ordinances of the city are barren of language expressing or implying the intention of the council to impose such duty. On the contrary, they merely grant the right and privilege of constructing, operating and maintaining railways in particular streets. The precise point arose in *State ex rel. Elmendorf* v. *San Antonio St. Ry. Co.*, 10 Tex. Civ. App. 12, 30 S. W. 266, where the court held that, under such circumstances as those presented in the case at bar, the specific duty was imposed upon the corporation to operate its line, and that *mandamus* would issue to compel performance. The case was taken to the Supreme Court by writ of error to the Court of Civil Appeals, and in the court of last resort the judgment was reversed. (*San Antonio St. Ry. Co.* v. *State*, 90 Tex. 520, 39 S. W. 926, 35 L. R. A. 662.) The question received the most careful consideration of the Supreme Court of Texas, and its opinion, which was filed in 1897, is the latest enunciation of the principles applicable thereto. So clearly and accurately does the court state the reasons for its decision, that we, believing them sound, and controlling the determination of this cause, quote and adopt the following: "It is one thing to hold that a company which has accepted a charter authorizing it to construct a line of railroad, with power to condemn property, and has constructed and is maintaining its line, may be compelled to so operate its line as reasonably to meet the necessities of the public; and, as we think, it is quite a different

one that a railroad company, by the acceptance of its charter, which simply makes it lawful to construct and maintain a railroad, assumes an obligation to construct it, and to maintain its operation so long as its corporate existence may continue. * * * The Legislature, in creating a corporation, has the power to give it an option to do or not to do the acts which it is authorized to perform. On the other hand, it may impose upon the corporation, as the law of its creation, the obligation to exercise to their fullest extent the powers which are granted. In either case the proposed corporators may accept or not; and in the latter, if they do accept, they may be compelled by *mandamus* to perform the duties so imposed. But to say that in granting a charter to do a public service there is no difference between making it lawful to do an act, and imposing it as an obligation to perform it, is to say that, by reason of the public interest involved, language is to have a different construction and effect from what it would have in statutes in general or in private contracts. Expressions may be found in the opinions of courts which countenance that doctrine, but we think there it is based upon an assumption that cannot be maintained upon sound principles. In legislating, the lawmaking power undertakes to determine what is to the interest of the public, and, under the limitations of the constitution, it is the sole judge of what will promote the public utility, and must be presumed to be capable of expressing its will in intelligible words. When, therefore, a corporation, whether *quasi* public or purely private, is granted the privilege of doing an act, and there are in its charter no express terms which make it obligatory to do the act, or other words from which by fair construction that intention can be gleaned, we do not see upon what sound principle the duty can be imposed. The allegations in the petition in this case show that the respondent company was chartered merely for the purpose of constructing and operating street railways in the city. The special act merely gave it the right of corporate existence for the purpose indicated. (*Tugwell* v. *Eagle Pass Ferry Co.*, 74 Tex. 480, 492, 9 S. W. 120, and

13 S. W. 654.) The streets were under the control of the city council. The company could do nothing without the consent of the council. The franchise in question was granted by the city council, and the claim is that it is by virtue of that concession, and its acceptance by the company, that the duty arose. But the ordinance, which is quoted above, merely grants 'the privilege' of constructing and maintaining street railways over the lines therein designated. No clearer words of mere permission could have been employed. Not only this, but there is in the ordinance neither sentence, phrase nor word that indicates that it was the intention of the council to make it a condition of the acceptance of its grant that the company should be bound to construct and operate railways over the streets which were therein specified. The company are required to observe all the ordinances of the city then existing, but it is not averred that there was any ordinance in existence at the time of the acceptance of the franchise which imposed that obligation. * * * It is clear that the ordinance in this case neither by express terms nor by implication imposes the duty upon the company. If the duty to construct and maintain the line is to be established, it must be upon the assumption that every privilege granted by a legislative body in reference to matter of public interest imposes upon the grantee who accepts it the duty to perform the acts he is allowed to perform. The assumption, in our opinion, is, as we have already intimated, not based upon sound reason; and is in opposition, at least, to the weight of authority. * * * We are of the opinion, also, that the fact that the road has been constructed and operated, and that a part is now operated, makes no difference. Under the grant of a privilege to construct and maintain, if, after acceptance, it is permissive only to construct, it is not obligatory to maintain. But we do not hold that the company can, against the will of the city, operate a part of its line, and not the whole. A privilege to establish an entire line of street railway may be granted when the privilege of constructing and operating a part only would not be, and for a failure to operate a part it would seem that

the whole might be forfeited.    It seems to us that the remedy
in this case is to forfeit the franchise to operate the branch
line in controversy.    *   *   *   We would not be understood
as holding that the common law does not impose some duties
upon companies chartered as common carriers, which may be
enforced by *mandamus*, although no mention of such duties
may be found in their charters.    All carriers who undertake
to transport goods or passengers for the public assume certain
duties to the public, but certainly carriers who are not corpo-
rations may at any time discontinue the business, if they elect
to do so; and we see no good reason why corporations may
not discontinue their enterprises, when the charter does not
in express terms or by fair implication forbid it.    If it is the
will of the Legislature, or of a municipal body to whom the
power to confer the privilege may have been granted, to im-
pose upon the corporation the duty to construct and to con-
tinue to operate the work, instead of a mere permission to do
so, it is not difficult so to provide by incorporating into the
grant some language which evinces that intention.''    (See,
also, Booth, St. Ry. Law, Sec. 65.)

If the council, by resolution adopted or order made under
the authority of Section 12 of Article III of Chapter XIX,
*supra*, should attempt to regulate the running of the cars on
a portion of the system not abandoned, but in operation, a
question different from that involved in this case, and requir-
ing the application of other principles, would be presented.

The judgment is affirmed.

*Affirmed.*