A. H. THURSTON, Appellee, v. CHAS. D. HUSTON, Mayor of the City of Cedar Rapids, Iowa, GEO. L. MENTZER, Recorder of said city; AND THE CEDAR RAPIDS AND MARION CITY RAILWAY COMPANY, Appellants.

Street Railway:   PASSAGE OF RESOLUTIONS BY COUNCIL:   VOTE.   A
1   majority of a quorum is all that is required for the passage of a resolution by a city council.

Street Railway:   EXTENSION:   CONSTRUCTION OF FRANCHISE.   Where
2   a city ordinance provided that a street railway company might construct and operate its lines on such streets as it thereafter should designate in an acceptance of the ordinance, and such other streets as the city council might from time to time designate by resolution, it is held that the provision requiring a designation of streets upon acceptance of the ordinance related to the minimum mileage at that time, and that the right to occupy other streets was implied in and contemplated by the ordinance and could be exercised by the authority of a resolution.

Street Railway:   EXCLUSIVE PRIVILEGES:   EXTENSION OF: Where the
3   franchise of a street railway company grants an exclusive privilege for a specified time and also authorizes an extension of its lines from time to time, a permission to extend will not operate to prolong the time of its exclusive privilege, nor is such right inconsistent with the existence of another system operating under a like general power.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

WEDNESDAY, FEBRUARY 17, 1904.

THE petition states the case.—*Reversed.*

*Chas. A Clark & Son* and *Wm. G. Clark* for appellant Cedar Rapids & M. C. Ry. Co.

*John N. Hughes* for appellants Chas. D. Huston and Geo. L. Mentzer.

*Smith & Smith* and *Crissman, Trewin & Holbrook* for appellee.

Weaver, J.—The defendant Cedar Rapids & Marion City Railway Company, as assignee of the Thompson-Houston Electric Company, operates a street railway system in Cedar Rapids under a privilege or franchise granted by an ordinance of said city. That part of the ordinance having reference to the streets to be occupied by the railway tracks, and particularly applicable to the present controversy, provides that the company "may enter upon and construct, maintain, and operate a single or double track railway, with the necessary turn-outs and switches, upon such streets and highways in said city as may be hereafter designated by the said Thomson-Houston Electric Company, in the written acceptance of this ordinance, to be given as hereinafter provided, and upon such other streets and public places as said council may from time to time by resolution designate." In accepting the terms of the ordinance, the railway company designated several different streets, not including Third avenue, hereinafter mentioned. A short time before the commencemnt of this suit, and several years after the installment of its system, the railway company applied to the city council for leave to extend one of its lines along and upon Third avenue, and a resolution was passed or attempted to be passed by said council granting the request upon certain conditions. The plaintiff, a resident property owner on said street, then instituted this suit to prevent the signing of said resolution by the mayor and recorder, to declare the same void, and to enjoin the use of said street by the railway company. The petition alleges, as grounds for the relief demanded, that no franchise has ever been granted to operate a railway on Third avenue; that the original ordinance was of no force or effect as the grant of a franchise, except, perhaps, to the streets named in the company's acceptance; and that the resolution in controversy was not passed by the necessary vote, as provided by statute. Many other matters of more or less immaterial character are pleaded, but not insisted upon in argument. Upon these allegations, a temporary injunction

was granted as prayed. Answering the petition, defendants admit the passage of the resolution by the city council granting the railway company leave to lay a track on Third avenue, and that plaintiff is the owner of lots fronting on said street, and specifically denies each and every other allegation upon which plaintiff's claim for relief is founded. Further and affirmatively they allege the granting of the street railway franchise originally to the Thomson-Houston Electric Company, its acceptance by said company, the assignment thereof by the Thomson-Houston Electric Company to the defendant Cedar Rapids & Marion City Railway Company, the action of the city council approving and affirming said assignment on certain conditions, and the acceptance of the said conditions by the defendant railway company. It further alleges that the franchise granted by the original ordinance is general in character, giving to the company the right to lay its tracks on any or all of the streets of said city as the growth of its population and increase of its business might from time to time demand, subject only to the proper supervision and control by the city through its council and mayor, and that, in pursuance of such privilege, the company applied to the city council for leave to lay its tracks upon Third avenue, and that said council, in the exercise of its proper discretion, granted said application. Having thus answered, defendants moved for a dissolution of the injunction, and, the motion being denied, they appeal.

I. The first proposition in the opening argument by the appellee is that the resolution in controversy was not passed by a sufficient vote of the city council. The petition merely

1. PASSAGE of resolution by council: vote. alleges, in general terms, "that a majority of the city council did not vote for the passage." The answer alleges that the city council consists of ten aldermen and the mayor, and that, of these members, five aldermen and the mayor—a majority of said number—voted for the resolution. It is said by the appellee that, under the city charter, which provides that the "mayor shall be the presiding officer of the city council and shall give the casting vote

when there is a tie," such officer has no right to a vote, save in a contingency thus provided for, and that without his vote the resolution did not pass by a majority of the entire council. Except for a statement in an affidavit by the mayor that but three members of the council voted against the resolution, there is nothing in the record to negative the existence of the condition authorizing the vote of that officer, but, taking all the several allegations together, it may, perhaps, stand as admitted that, omitting the mayor's vote, the members of the council recorded themselves in favor of the resolution by a vote of five to three. The only question to be considered in this connection is whether a vote of a majority of the entire council is necessary to its passage. No authority is cited by the appellee in support of this contention. In the absence of any statutory or charter restriction, we think the rule is well established that a majority of a quorum is all that is required for the adoption or passage of any resolution or order properly arising for the action of a city council or other collective body exercising legislative, judicial, or administrative functions. *Buell v. Buckingham,* 16 Iowa, 284; (85 Am. Dec. 516); *Atty. Gen. v. Shepard,* 62 N. H. 383 (13 Am. St. Rep. 576); *Heiskell v. Mayor,* 65 Md. 125 (4 Atl. Rep. 116, 57 Am. Rep. 308); *Rushville Co. v. Rushville,* 121 Ind. 206 (23 N. E. Rep. 72, 6 L. R. A. 315, 16 Am. St. Rep. 388); *Kingsbury v. Centre,* 12 Metc. 99; *State v. Jersey City,* 27 N. J. Law, 493; *Launtz v. People,* 113 Ill. 137 (55 Am. Rep. 405). The very fact that the statute makes specific requirement of a majority of all the members for the passage of ordinances, and the adoption of orders and resolutions to enter into contracts or for the appropriation of money, is a clear indication of the legislative intent to leave all matters arising for the action of the council, and not thus enumerated, to be governed by the parliamentary rule generally recognized by the courts, as above indicated. Such, indeed, seems to be the holding already announced by this court in *Strohm v. Iowa City,* 47 Iowa, 42. It follows that the point made by the appellee against

the due passage of the resolution cannot be sustained. As the resolution received a majority of the quorum, it becomes unnecessary for us to consider or decide whether, under the special charter of the city of Cedar Rapids, or the general law of the state, the mayor can be regarded as a member of the council.

II.   The next reason given why the relief asked should be granted (and the proposition most earnestly pressed in argument) is that the resolution permitting the laying of 2. STREET rail- the street railway track in Third avenue is a way: exten- new franchise, and cannot be granted without sion: construc- tion. first giving notice as directed in Code, sections 955, 956.   If the premise be correct, and the right to operate a railway in Third avenue is a new franchise, then the conclusion stated by counsel cannot well be avoided.   But is it in any proper sense of the word a new franchise, or is the privilege to occupy this street implied and contemplated by the original grant?   Without prolonging our opinion to set out the original ordinance in full, we will say that a careful reading of its provisions convinces us that the contract embodied in the grant by the city, and acceptance by the railway company, contemplated a system of street railways for the accommodation of the city generally; that so much of said system as was reasonably required for immediate needs should be constructed without delay; and that extensions of these lines into new neighborhoods and upon other streets, should be made from time to time in the future as the growth of said city should demand, and the city council designate. This is fairly indicated by the fact that the original grant, after making use of the language quoted by us in the opening statement, proceeds to designate only the general directions in which the initial lines shall be constructed, and fixes the number of miles of track which shall be regarded as the minimum of requirement.   The provision that the company shall, in its acceptance of the grant, designate the streets to be occupied by its tracks, has reference only to this minimum of mileage which was exacted as the price or condition of the

privilege granted. The future growth and expansion of the
system was provided for in the clause, "and in such other
streets and public places as said council may from time to
time by resolution designate." Unless this provision for the
future was void for uncertainty, or as being in excess of the
power vested in the city, then the resolution permitting the
use of Third avenue by the railway company was a lawful ex-
ercise of the discretion vested in the city council, and the in-
junction should have been dissolved. We see no occasion to
question the grant on the ground of uncertainty. If the con-
struction of an ordinary railway is contemplated between two
designated terminal stations, the route to be occupied may
perhaps be designated with reasonable certainty in its char-
ter, but a street railway system intended for the use and con-
venience of a growing city for a long period of years presents
a different problem. Of necessity, it must be a growth—a
development—and the direction or number of the lines or
tracks which will be required in the future cannot be foretold
with any precision. New streets will be opened, new addi-
tions to the city will be laid out, and other changes not now
anticipated will take place. To meet these contingencies, the
city council, in granting a charter for a comprehensive street
railway system, must either in sweeping terms  grant   the
right to occupy all streets now or hereafter opened, or it must
adopt some such expedient as was made use of in this case,
and provide for the extension of lines from time to time as
the need therefor may arise, and the city  council  direct.
These provisions are not for the granting of new privileges
or franchises, but for the reasonable regulation and control
of the company in the use of the franchise originally granted.
To adopt the other plan, and grant a franchise expressly al-
lowing the company to enter upon and occupy any or all
streets, without any power of veto or regulation by the city
council, even if of any validity, would be a most unwise and
impolitic abandonment of an important right. To say that
it is not within the power of a city to grant a franchise in
general terms, as was here attempted, and that every permis-

sion for the extension of the railway into another street or alley is a new franchise, requiring preliminary notice, and possible submission to the popular vote, as upon an original grant, is to hamper the progress and usefulness of a public utility by an unreasonable restriction, and tends to a multiplication of petty franchises, from which a confusion of claims, with resultant burdensome litigation, is sure to arise, to the detriment of public interests. There is nothing, therefore, which is unreasonable or against public policy in holding the city clothed with power to grant a franchise in the terms here employed, nor do we find anything in our statutes which forbids it.

If, then, as we conclude, the consent of the council for the extension of the company's track into Third avenue is not the granting of a new franchise, but is simply an exercise of the reserved power to regulate the company's use of the city's streets under the original grant, then the provisions of Code, sections 955, 956, upon which appellee relies, are not applicable, and that part of his argument based upon said statute requires no further consideration. That statute, by its express terms, is made applicable only to the granting of an original franchise, or to a renewal or extension of the period for which a grant has been made, and not to mere extensions or enlargements of the facilities which the franchise holder employs in exercising the power originally granted. It is to be conceded that a franchise for a street railway may be confined to any one or more streets or neighborhoods of a city, and if the terms of the grant, when fairly construed, indicate that such restricted or localized privilege was intended, then, of course, any extension of such railway into other streets or districts is subject to all the conditions pertaining to the grant of a new or independent franchise. It is a matter of common observation, however, that, outside of the very large cities, street railway franchises confined to a few streets or districts of the municipal territory are very rare; and, while exclusive franchises, except for limited periods, are not allowable, there can be found very few investors

disposed to undertake the construction and operation of a street railway system in our small cities, if the right to expand its lines to accommodate the growth and expansion of the city is denied, or if each successive extension of its track into another street involves the procurement of a new and additional franchise. We feel quite certain that the practical construction which has been given the law by the cities of Iowa is in accordance with these views, and that to hold otherwise would result in disastrous confusion.

It is further urged that while, by the terms of the original ordinance, the rights of the railway company were made exclusive for a term of five years only, the construction of the law which we have approved results in giving the company an exclusive privilege for the entire period of twenty-five years. This does not follow—certainly not as a legal necessity. It may be that in a small city the company first in possession of a general franchise, and with a system already inaugurated, holds such a position of vantage that under all ordinary circumstances no competitor will care to enter into a competition, even if another franchise be granted; but competition is excluded or prevented by the operation of natural laws, and not by the terms of the statute or ordinance.

3. Street railway: exclusive privilege: extension of.

While we hold that the defendant company has a right to enter upon all such streets as the council, in the reasonable exercise of its discretion, may designate, this is not necessarily inconsistent, with the existence of another street railway system in the same city, operating under another franchise embodying the same general terms and conditions.

Turning, as the case does, so largely upon the construction of our own statutes, we think it unnecessary to go into any extended review of the many authorities cited by counsel. We have examined all of them, and find none which is necessarily inconsistent with our conclusion.

It follows that the judgment below must be reversed, and the cause will be remanded, with directions to the trial court to sustain the motion for dissolution of the injunction. Costs of appeal will be taxed against the appellee.—Reversed.