CLIFTON L. BREMER, trustee, *vs.* COLUMBIAN NATIONAL
LIFE INSURANCE COMPANY.

Suffolk.    March 13, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Trust.   Mortgage,* Discharge, Assignment.   *Payment.    Equity Pleading and
Practice,* Appeal.

At the hearing upon a bill in equity by a trustee under a will seeking to have an al-
leged assignment by a former trustee to the defendant of a part of the principal
of the trust, consisting of a mortgage note for $6,000 and the mortgage securing
it, set aside, it appeared that the will gave the trustee no power to change the
form of an investment without an order of the Probate Court, that, before the
time of the alleged assignment, the mortgage note in question being overdue,
the trustee demanded payment from one to whom the mortgagor had con-
veyed the equity of redemption and agreed with the owner's agent that, if the
agent would procure funds and pay the mortgage, he would allow him $50.
There was evidence tending to show that the owner of the equity through his
agent thereupon applied to the defendant for a loan upon the real estate of
$6,000, that he finally was allowed a loan of $5,500, that the defendant con-
sented to accept the verification of the title by the owner's conveyancer, who
reported that it was subject to two mortgages, the one held by the trustee being
the first; that thereupon the defendant delivered to the owner's conveyancer a
check payable to the conveyancer's order for $5,500, the conveyancer indorsed
the check to the trustee, the agent of the owner paid the trustee $450, and the
trustee indorsed the note to the defendant without recourse and delivered it to
him, and executed and delivered to the defendant, without having procured any
order from the Probate Court, the assignment of the note and mortgage in ques-
tion and afterwards misappropriated the $5,950 received by him; that, at the
time of the passing of papers, the defendant received no note or written ac-
knowledgment of a debt from the owner, but that afterwards the owner signed
and gave to the defendant a receipt for the $5,500 paid by it and an extension
of the mortgage, which contained an agreement by him to pay the mortgage
debt at the end of the extended period and the interest thereon meanwhile;
that the entries on the books of the defendant purported to show a loan to the
owner.   The single justice found as a fact that the defendant attempted to pur-
chase the note and mortgage from the trustee, and, since the trustee had no power
to sell it, made a decree for the plaintiff.   The defendant appealed, and, on con-
sideration of all the evidence, which was reported by a commissioner, it was *held,*
that the transaction was not a sale of the mortgage to the defendant, but that
in effect the trustee merely received from the owner payment of the mortgage
debt, which was within his power.

BILL IN EQUITY, filed in the Supreme Judicial Court for the
county of Suffolk July 26, 1907, by the trustee under the will of

Francis W. Sayles, seeking to set aside a sale and conveyance of a note and mortgage by the plaintiff's predecessor as trustee to the defendant.

There was a hearing before *Sheldon*, J. The plaintiff's immediate predecessor as trustee was Charles F. Berry. The provisions of the will relating to the powers of the trustee authorized him merely to "stand possessed" of the trust fund, and to "pay over the income and produce" to the beneficiaries.

At the hearing, the plaintiff read interrogatories directed by him to the president of the defendant, and the answers thereto, from which it appeared that Berry, as trustee, had indorsed the note in question without recourse to the defendant and assigned to it the note and mortgage. One of the indorsements on the note was "1903 Mch. 31. Five hundred dollars paid on account of principal." In answer to one of the interrogatories, the defendant's president stated "That he does not know from whom the note was obtained, but that it was obtained on March 31, 1903."

Berry, called by the plaintiff, stated that he had agreed with Harry Friedberg, the authorized agent of the owner of the equity of redemption, that, if he would procure funds and pay off the mortgage, he would allow him $50, that he received on March 31, 1903, $450 on account of the principal of the note from the owner of the equity of redemption of the property described in the mortgage; that, at the time when he delivered the assignment of the mortgage to the defendant, he received "in payment for the assignment" a check of the defendant for $5,500 payable to the order of Kern and McLoud, and indorsed by them to him as trustee, which he deposited in his general account as trustee, and the proceeds of which he misappropriated.

Joseph Balch, director of the real estate department of the defendant, testified in substance that in March, 1903, he talked with Harry Friedberg, the authorized agent of Julia Friedberg, with regard to her procuring a loan upon the property in question, and, after several conversations, the witness told him he "would make this loan on a basis of $5,500." Friedberg asked him if he "would take" the report of Kern and McLoud, conveyancers, and the witness said he would. The name of Berry was not brought into the conversation, nor did the witness, to his

knowledge, have any correspondence or communication with Berry about the matter until after the agreement for the loan was made. "When we came to passing the papers, I had some conversation with Mr. Berry; whether it was at his office or only in the registry of deeds on the day of passing the papers, I could not say for certain, but not until the end of the transaction." At the time of the passing of the papers, the witness delivered the check as to which Berry had testified either to Kern and McLoud or to the Friedbergs, he could not be certain which. The witness did not know whether or not Berry was at the registry of deeds at the time the papers were passed.   On April 1, 1903, the day after the passing of papers, the witness received from Harry Friedberg an extension of the mortgage in question, signed by Julia Friedberg, and wrote to him enclosing a blank cash voucher or receipt for $5,500 for Mrs. Friedberg to sign, which subsequently was signed and returned to him.   The defendant did not employ Kern and McLoud to look up the title for it, but acquiesced in the request of Friedberg that they pass on the title.   The witness knew that Berry held the mortgage as trustee.   In response to a question by the defendant's counsel, the witness stated that he did not at any time make any agreement with Berry as to a purchase of the mortgage from him.

Other witnesses for the defendant testified to the effect that the preliminary negotiations with Friedberg were for a loan to Julia Friedberg by the company, and that the transaction was so treated on its books.

Francis P. Sears, who at the time of the transactions in question was treasurer of the defendant, testified from the books of the defendant in part as follows:

"Q. Will you turn to the cash book of March 31, 1903, and tell me whether it shows any money paid out either to Mr. Friedberg or to Mr. Berry?   A.   March 31, 1903, Julia Friedberg, $5,500. — Q.   Does your cash book show at any time any money paid out to Mr. Berry?   A.   No. — Q.   What was that $5,500 paid out for?   A.   For a mortgage.

"The Presiding Justice: If it was the date of this mortgage, I would infer that, unless there was evidence to the contrary.   Of course I do not say I shall be satisfied that this

money was paid to Julia Friedberg, because it certainly was not."

" Q. Have-you got the account of Julia Friedberg ? A. Yes. ' No. 7. Name, Julia Friedberg; address, 103 East Newton St.; promissory note, Aug. F. Arnold ; date, Sept. 22, 1894; amount, $5,500 ; mortgage matures March 31, 1908; interest, rate 5 per cent, payable March 31 and Sept. 30. . . . Mortgage recorded Suffolk deeds, Book 22, 2895, Arnold to Balch; mortgage assigned, Suffolk deeds, 2887, 544; Berry, successor to Balch; mortgage extended, Suffolk deeds , ; successor, Columbian.' "

The witness stated that he did not know what " successor, Columbian " meant, he did not write those two words. It was two or three days before the passing of papers that he first learned that the mortgage was an old one and that the defendant was taking an assignment of a mortgage from Berry, and the entries on the books were made by him after that. The company regarded itself as the absolute owner of the mortgage. At the time the papers were passed the company did not have anything from Mrs. Friedberg to show that any loan had been made to her. The receipt and the extension agreement signed by her were procured afterwards.*

" Q. (by defendant's counsel). Then, summing it all up, all that you did was this : that you supposed that you were loaning Mrs. Friedberg $5,500, and made that entry upon the books at the time, and then, as a short cut, you simply took an assignment of the mortgage from Mr. Berry after the money had been paid to him ? A. Yes."

Percy E. Walbridge, associated with the firm of Kern and McLoud, testified that he acted for the firm in the transactions in question. The charge in their books was to Julia Friedberg. They found the title to be in her subject to the mortgage in question, which was a first mortgage, and to a second mortgage given to one Atherton. . . . " I suppose I must have reported to [the defendant] the condition of the title . . . before it was

---

* This extension was in evidence and contained an agreement by Julia Friedberg to pay the mortgage debt at the termination of the extended period, and the interest thereon in the meantime.

passed." In receiving the check, which he indorsed to Berry, " I was acting in passing the papers for a loan from the Columbian Company to Julia Friedberg. I supposed I was acting for both of them; I was acting to give a certificate of title to the [defendant], or acting for them as to whether the title was good, or for them to accept my statement as to whether the title was good."

" Q. For whom were Kern and McLoud acting? A. Well, I don't know; I suppose they were acting for Friedberg. The whole transaction showed that the Columbian Life Insurance Company were loaning money to Julia Friedberg. In my judgment the reason that mortgage was assigned was that there was a second mortgage there which could not be discharged.

" Q. There was a second mortgage, was there? A. Yes, there was a second mortgage on there to William H. Atherton.

" Q. You say the money was loaned to Julia Friedberg: then, when you found a second mortgage, instead of having that discharged and a new mortgage made, they took an extension? A. An extension was taken which bound Julia Friedberg to pay the debt and relieve making a new loan.

" Q. Did you have anything to do with Berry in the matter? A. I did not know anything about Berry except that he was willing to assign rather than to discharge." The witness also stated that he prepared the assignment of the mortgage, and took Berry's acknowledgment thereof.

Berry, recalled by the defendant, stated that he had no memory as to any conversation with any one representing the defendant before the execution and delivery of the assignment of the mortgage, that all he remembered was that, on the day of the passing of the papers, he " was asked at the last moment by somebody if he was willing to assign the mortgage, but he could not remember who asked him."

The foregoing is in substance all the testimony introduced at the hearing with regard to the nature of the transaction which took place when the assignment of the mortgage was executed and delivered by Berry. At the close of the testimony the single justice made the following oral statement:

" I think the averments of the bill are good. Whatever was originally the intention of the insurance company, I cannot

help finding that it consented finally to take — it was satisfied to take, and it did take — this mortgage with an indorsement of $500 upon it as an investment of its money. It consented to take this assignment from Berry. It then, whatever its prior intention had been, made up its mind to buy this from Berry. The fact that it continued to make the entries on its books in the same way as it had been in the habit of making them before that time does not seem to me of any very great importance.

"I rule, as a matter of law, that upon my findings of fact there was no right of the insurance company to be subrogated to the benefit of this security as against the mortgagee, and I find that I am not called upon here to determine whether it had any such right as against the mortgagor. I think that the insurance company must be regarded here as having purchased this note and mortgage from Berry, the former trustee, who had no right to make an assignment of the mortgage, although he would have had the right to receive payment of the debt and discharge the security ; and the insurance company must be dealt with as having knowledge of that fact. He had obtained no authority through the Probate Court to make any disposition of this security ; he had none by the terms of the trust. He acted wrongly in making the assignment. The insurance company had itself examined the title through a person upon whom it was content to rely for that purpose, and must be regarded as having knowledge of the fact he had no right to do it. The plaintiff may have a decree requiring the insurance company to assign and deliver, — to assign the mortgage, to deliver the mortgage to him, and to indorse the note and deliver the note to him, and for the amount of principal and interest that has been received upon the note by the insurance company since the assignment to it."

A decree accordingly was entered for the plaintiff, and the defendant appealed.

*J. M. Hallowell*, (*M. M. Horblit* with him,) for the defendant.

*C. L. Bremer, pro se.*

BRALEY, J. In *Bremer* v. *Hadley*, 196 Mass. 217, the authority of the trustee either to sell the property held in trust under the will of Francis W. Sayles, or to change the investments, was carefully considered. Because of the language used by the tes-

tator, it was held that the trustee was not empowered to convert the estate from one form of security into another, unless authorized by decree under the provisions of R. L. c. 147, § 15, as amended by the St. of 1907, c. 262, § 1. The plaintiff claims that the present case is governed by that decision.

Before deciding the question, it becomes requisite to ascertain the substantially undisputed facts involved in the transaction which the bill asks to have set aside. The plaintiff's predecessor, Berry, found among the investments made by a former trustee a promissory note secured by a mortgage of real estate given by one Arnold. When Berry succeeded to the trusteeship, the note was overdue, but the interest continued to be paid regularly for nearly six years after maturity by Julia Friedberg, the surviving owner of the equity of redemption, who with her husband had acquired title as tenant by the entirety shortly after the mortgage was given. The trustee having demanded payment of the principal, she applied to the defendant for a loan to enable her to take up the mortgage. But, while the application was granted, an examination of the title disclosed that a second mortgage had been given, which was still outstanding. To avoid any question as to priority of title which might arise if the first mortgage was discharged, when the parties met to pass the papers, the trustee without any previous arrangement between himself and the defendant, upon receiving payment, executed and delivered an assignment, instead of a discharge, accompanied with a transfer of the note without recourse. The mortgage thereupon was extended for a period of five years, under an agreement by which Mrs. Friedberg became personally bound to the defendant to pay the debt. During the negotiations, there does not appear to have been any proposition from either the trustee or the company, that he should sell and it should buy the mortgage, but the object which the borrower and lender mutually sought to accomplish was this: An amount sufficient to take up the outstanding mortgage after the partial payment had been made was to be lent by the defendant upon the distinct understanding that the loan was to be secured by a mortgage upon her real estate. When, however, the condition of the title had been ascertained, as a matter of precaution on the part of counsel entrusted with the conveyancing, and under their advice, the old mortgage was

assigned with an agreement of extension, instead of being discharged, and a new mortgage taken. It is evident that the trustee was not in the market seeking for an opportunity to change an investment, but was insisting upon the payment of a debt long overdue. If it turned out that, to raise the money his debtor must remortgage the property, and the defendant was willing to accept this security and make the necessary advancement, the transaction still remained essentially one where an old debt was liquidated with funds obtained from a new loan. The note, to which the mortgage was merely accessory, having matured, it became convertible into money according to its tenor, and, if not paid, suit could have been brought or the mortgage could have been foreclosed, as the duty devolved upon the trustee to protect the estate from loss. If, to obviate this expense and the chance of a failure to collect, or to realize a sum sufficient to pay the debt with the costs of foreclosure, he had received the principal in bank notes, and discharged, or, if equally advantageous to the trust, assigned the mortgage, it would be going far to say that the payment or the transfer was a nullity because the trustee was not authorized to convert the indebtedness into money. In its administration there undoubtedly must be a strict conformity with the directions found in a testamentary trust. But the words of the testator, that the trustee shall " stand and be possessed " of the trust estate, and " pay all the net income and produce of the same " to the beneficiaries for life, should not be enlarged beyond the construction put upon them in *Bremer* v. *Hadley, ubi supra.* It may be reasonably supposed that, if in the administration of the trust it became desirable or essential to close an investment, which by its terms had become payable, the testator did not intend that the trustee should be prohibited from receiving the proceeds and giving an acquittance in settlement, without first obtaining the sanction of the court. The general directions which he gave carry with them, by implication, the employment by the trustee of all reasonable and proper means by which they could be made effective, not only to preserve the estate as he left it, but to produce an income for the support of the beneficiaries for life. The acts of Berry, being commensurate with the purposes of the trust, were within his fiduciary authority, and the defendant acquired an indefeasible

title to the note and accompanying mortgage. *Goodrich* v. *Proctor*, 1 Gray, 567, 570. *Manahan* v. *Varnum*, 11 Gray, 405.

We are of opinion that, upon the evidence, for the reasons stated, the decree for the plaintiff must be reversed, and a decree entered dismissing the bill with costs. *Poland* v. *Beal*, 192 Mass. 559, 561. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143.

*Ordered accordingly.*